Jesswill PEREZ, Pro Se Plaintiff,

v.

Joseph PONTE, New York City Correction Department Commissioner and Michael Sposato, Sheriff of the Nassau County Jail, Defendants.

CV 16–645 (JFB) (AKT)

United States District Court, E.D. New York.

Signed 02/14/2017

596

Jesswill Perez, Fishkill, NY, pro se.

Colin M. Ceriello, Office of the Corporation Counsel New York City Law Department, New York, NY, Pablo A. Fernandez, Nassau County Attorney's Office, Mineola, NY, for Defendants.

## REPORT AND RECOMMENDATION

A. KATHLEEN TOMLINSON, U.S. Magistrate Judge

### I. PRELIMINARY STATEMENT

*Pro se* Plaintiff Jesswill Perez ("Plaintiff") brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of the Fourth, Sixth and Fourteenth Amendments of the United States Constitution arising from incidents which occurred while he was a pre-trial detainee. *See generally* Complaint ("Compl.") [DE 1]. Defendants Joseph Ponte and Michael Sposato (collectively, "Defendants") have moved to dismiss the Complaint, with prejudice, pursuant to Federal Rule Civil Procedure 12(b)(6). *See* Notice of Motion [DE 16, 20]. Plaintiff opposes Defendants' respective Motions to Dismiss and, in addition, has filed a Motion to Amend his pleading to assert additional facts and to name additional parties to support his claims. *See generally* Plaintiff's Motion to Amend [DE 33].[1] Judge Bianco referred Defendants' Motions to Dismiss as well as Plaintiff's Motion to Amend to this Court for a Report and Recommendation as to whether any of the motions should be granted. *See* DE 37.

### II. BACKGROUND

#### A. *The Complaint*

The following factual allegations have been taken from Plaintiff's Complaint as well as the amplified statement of facts raised in Plaintiff's memorandum of law in opposition to the respective motions to dismiss. Because Plaintiff is proceeding *pro se*, the Court is obligated to construe his pleadings liberally to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam) All facts alleged by the Plaintiff are assumed to be true for purposes of deciding the motions to dismiss and are construed in a light most favorable to the Plaintiff as the non-moving party. *See, e.g., LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009); *Matthews v. City of N.Y.*, 889 F.Supp.2d 418, 425 (E.D.N.Y. 2012).

##### 1. The July 16, 2015 Transfer to Nassau County Correction Center

On July 16, 2015, Plaintiff, a pre-trial detainee initially housed at Riker's Island Prison ("Riker's"), was transferred to Nassau County Correctional Center

---

**1.** The Court points out that Plaintiff attached his memoranda in opposition to each Defendants' motion to dismiss as part of his motion to amend. *See* DE 33. In addition, although Plaintiff's opposition papers with respect to Defendant Ponte's motion to dismiss appear to contain page numbers, the opposition papers submitted in response to Defendant Sposato's motion to dismiss are not paginated. For ease of reference, and because Plaintiff's opposition papers should be considered as one complete submission, the Court has assigned sequential page numbers ranging from 1 through 11.

("NCCC"). Compl. Section IV ¶ 1. The Court points out that Plaintiff does not specifically characterize himself as a pre-trial detainee. However, in his Complaint, he states that he was awaiting trial with respect to his pending criminal case, which was scheduled to begin on January 25, 2016. *Id.*

Although Plaintiff asserts that the transfer to NCCC took place so that he could be alternatively housed, he alleges that the underlying reason for the transfer was never conveyed to him by officials from either facility. *Id.* In addition, he claims that (1) he was not provided with any documentation or a hearing in conjunction with or subsequent to the transfer, and (2) the transfer violated his due process rights. Pl.'s Opp'n at 2. Further, Plaintiff claims that while housed at NCCC, he was afforded access to the law library for only one hour per week (in contrast to two hours per day of access while at Rikers) and had no ability to telephone his attorney free of charge. *Id.* The transfer has resulted in geographical difficulties in gaining access to his attorney since he is unable to be transported to court to meet with his attorney. Likewise, Plaintiff maintains that it is "difficult for [his] attorney to travel to Nassau County." *Id.*

### 2. The September 15, 2015 "Pat Frisk" Incident

■ On September 15, 2015, NCCC corrections officers conducted a random search of Plaintiff's cell. Compl. Section IV ¶ 2. In preparation for the search, officers restrained Plaintiff using handcuffs and leg shackles, after which Plaintiff was removed from his cell. *Id.* Once Plaintiff was sufficiently restrained, Officer Foley[2] con-

---

**2.** Plaintiff did not name Officer Foley as a Defendant in this action. *See generally* Compl. However, although Rule 10(a) of the Federal Rules of Civil Procedure mandates that a caption of a pleading contain the names of all parties, "the caption itself is normally not determinative of the identity of the parties or of the pleader's statement of claim." *JCG v. Ercole*, No. 11 CIV. 6844, 2014 WL 1630815, at *16 (S.D.N.Y. Apr. 24, 2014), *report and recommendation adopted*, No. 11 CIV. 6844, 2014 WL 2769120 (S.D.N.Y. June 18, 2014) (quoting *E.E.O.C. v. Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, Local 580*, 139 F.Supp.2d 512, 525 (S.D.N.Y. 2001)). Instead, when determining whether a person has been properly made a party to a lawsuit, the court should inquire into "[t]he caption, pleadings, service of process and other indications of the intent of the pleader." *Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, Local 580*, 139 F.Supp.2d at 525 (quoting *Nationwide Mut. Ins. Co. v. Kaufman*, 896 F.Supp. 104, 109 (E.D.N.Y. 1995)); *see JCG*, 2014 WL 1630815, at *16; *Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082, 1085 (9th Cir. 1983) ("[T]he question of whether a defendant is properly in a case is not resolved by merely reading the caption of a complaint. Rather, a party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant."). In addition, with respect to *pro se* litigants, "courts have found *pro se* complaints to sufficiently plead claims against defendants not named in the caption when there are adequate factual allegations to establish that the plaintiff intended them as defendants." *JCG*, 2014 WL 1630815, at *16; *see Ocasio v. Riverbay Corp.*, No. 06 Civ. 6455, 2007 WL 1771770, at *7 (S.D.N.Y. June 19, 2007) (finding that text of complaint established individual as intended defendant despite lack of specificity in caption); *Gibson v. Brown*, No. 12 Civ. 622, 2012 WL 1744845, at *1 (E.D.N.Y. May 16, 2012) (deeming caption amended to include defendants listed in body of complaint but not named in original caption); *O'Neal v. Cty. of Nassau*, 992 F.Supp. 524, 531 (E.D.N.Y. 1997) (finding plaintiff sufficiently alleged personal involvement of certain individuals even though he failed to name them as party-defendants in the caption or body of the complaint); *Trackwell v. United States Gov't.*, 472 F.3d 1242, 1243–44 (10th Cir. 2007) ( "[I]n a pro se case when the plaintiff names the wrong defendant in the caption or when the identity of the defendants is unclear from the caption, courts may look to the body of the complaint to determine who the intended and proper defendants are."). Because Plaintiff

ducted a "pat frisk" of Plaintiff's person. *Id.* Plaintiff asserts that while conducting the "pat frisk," Officer Foley shook the waistband of his pants, touched him between his buttocks and then removed his fingers, smelled them and told Plaintiff that he "smell[ed] sweet." *Id.*; *see* Pl.'s Opp'n at 3. Plaintiff characterizes Officer Foley's behavior as a "sexual assault" and states that although he complained to Internal Affairs, they never pursued the incident. *Id.*

### 3. The September 29, 2015 Physical Assault by Corrections Officers

On September 29, 2015, Plaintiff was directed to submit to a strip search and refused to do so—ostensibly because he would have had to remove his clothing in front the same officer whom he alleges sexually assaulted him during a prior incident. Compl. Section IV ¶ 3. Although Plaintiff claims that he asked officials whether a different officer could oversee the search, his request was refused and he then "refused to strip." *Id.* According to Plaintiff, when he refused to take off his clothing, he was "sprayed with chemicals," "thrown on the floor," "punched," and then transported to the medical facility. *Id.* Upon his arrival at the medical facility, his clothes were removed, after which he was transported back to the behavior management unit. *Id.* Plaintiff states that while at the medical facility, he was "naked in front of a lot of people" and was transported in the nude to the behavioral unit where he

was directed to "squat in front of over 20 inmates" before he was directed to shower. *Id.*

### 4. The December 26, 2015 [3] and January 6, 2016 Attacks by Fellow Inmates

Plaintiff states that he "was slashed and assaulted by an unknown inmate" on December 26, 2015 and that he reported the incident to Officer Trada. Compl. Section IV ¶ 4. Following Plaintiff's report of the assault, he was transported to the medical facility and then taken to a different housing area within NCCC.

On January 6, 2016, Plaintiff suffered another violent altercation while speaking with an officer in the recreation yard. *Id.* According to Plaintiff, an unidentified inmate approached him from behind and slashed him from his ear down to his chin. *Id.* At the time, Plaintiff was assaulted, another inmate was also under attack at the opposite side of the recreation yard. *Id.* Plaintiff maintains that the officer he was speaking with told him to "stand still," but when other inmates approached Plaintiff, the officer ran back to his office. *Id.*

### 5. The April 7, 2016 Transfer Back to Riker's Island and Subsequent Segregation

Plaintiff was transferred back to Riker's on April 7, 2016, and was immediately placed in isolation "from everyone in the housing area." Pl.'s Opp'n at 8. While in isolation, Plaintiff was visited by Ms. King, Executive Director of the Board of Correc-

has clearly identified Office Foley as being personally involved in the "pat frisk" incident, the Court construes Plaintiff's *pro se* pleadings "to have asserted claims against [Officer Foley], despite the failure to list [him] in the caption." *JCG*, 2014 WL 1630815, at *16.

3. Although in his Complaint Plaintiff states that the first attack occurred on September 26, 2015, in his subsequent opposition to De-

fendants' motions, he twice states that the first incident took place on December 26, 2015. *Compare* Compl. Section IV ¶ 2 *with* Plaintiff's Reply to Motion to Dismiss ("Pl.'s Opp'n") at 2–3. In reading both of Plaintiff's submissions, it appears to the Court that the December 26, 2015 was the date of the first incident and therefore that is the date that will be referenced.

tions, who inquired if Plaintiff was receiving all his entitlements and asked whether he consented to remaining in isolation. *Id.* Plaintiff says he expressed to Ms. King that he "wanted to go back to general population to associate with people instead of being isolated all day." *Id.* Several days later, Plaintiff claims that Chief Turhan Gumusdere and Ms. King spoke with him about remaining in isolation. Plaintiff asserts that he told Chief Gumusdere that he did not "want to be in protective custody.": *Id.* According to Plaintiff, Chief Gumusdere stated that "[I] heard you [were] giving my budd[ies] in [N]assau a hard time[.] [Y]ou act like an asshole you [are going to] get treated like one." *Id.* Following this conversation, Plaintiff states that he was left in isolation until he was subsequently transferred to another facility. *Id.*

### 6. The April 14, 2016 Transfer to Rockland County Jail

At some point following Plaintiff's conversation with Ms. King and Chief Gumusdere regarding his isolation, the Assistant Chief (Plaintiff does not identify this individual by name) visited with him and purportedly stated that prison officials would be "sending [Plaintiff] far away w[h]ere you [will not] be able to complain." *Id.* Thereafter, on April 14, 2016, Plaintiff asserts that he was transferred to Rockland County Correctional Center ("Rockland") without being given a reason for the transfer or any information concerning his right to appeal the decision. *Id.* Plaintiff claims that similar to his earlier transfer to NCCC, his subsequent transfer to Rockland prevented him from contacting his attorney. *Id.* Specifically, Plaintiff states that from May 23, 2016 through May 27, 2016, he was unable to speak with his counsel because he was leaving Rockland at 6 a.m. to attend court and did not get back until 1 a.m. *Id.* In addition, Plaintiff claims that because he could only make

collect calls, there was "no way to contact [his] attorney." *Id.*

### B. Claims of Supervisory Liability

According to Plaintiff, Defendant Ponte: (1) created and allowed the continuation of an unconstitutional transfer policy or custom that permitted inmates to be transferred to facilities outside New York City without regard to the fact that facilities located outside of New York City had more restrictive housing conditions; (2) was grossly negligent in supervising subordinates; and (3) failed to address Plaintiff's letters that he feared for his life while housed outside of New York City. Pl.'s Opp'n at 5.

Plaintiff likewise asserts that Defendant Sposato was responsible for: (1) the care, custody, confinement and control of NCCC and failed to ensure good order was maintained; (2) the actions of NCCC's officers and employees such as in situations constituting the use of excessive force and sexual assault; and (3) the deliberate indifference of other prison officials in failing to protect plaintiff from harm at the hands of other prisoners. *Id.* at 3.

### C. Relevant Procedural History

Plaintiff filed the instant action on January 28, 2016. DE 1. In addition to filing his Complaint, Plaintiff submitted an application to proceed *in forma pauperis* on the same date. DE 2. On February 9, 2016, Judge Bianco granted Plaintiff's *in forma pauperis* application. DE 6. Thereafter, on February 17, 2016, summonses were issued to both Defendants. DE 7. Defendant Sposato executed the summons on March 21, 2016 while Defendant Ponte's summons was executed and returned on March 28, 2016. DE 8, 9. Instead of filing Answers to Plaintiff's Complaint, both Defendants sought leave to file motions to dismiss pursuant to Rule 12(b)(6). DE 10, 12.

Judge Bianco waived the pre-motion conference requirement and granted both Defendants leave to file their motions to dismiss. DE 11, 13.

Both Defendants filed their motions on May 16, 2016. DE 16, 20. Thereafter, on June 22, 2016, Plaintiff advised the Court that he had been transferred to a different correctional facility and requested that all documents (including those previously served) be sent to his current address since he had not received them. DE 25. Judge Bianco granted Plaintiff's request on July 6, 2016 and provided Plaintiff additional time within which to respond to Defendants' motions. Electronic Order dated July 6, 2016.

On August 26, 2016, following submission of Defendants fully briefed motions to dismiss, Plaintiff filed a motion seeking leave to amend his complaint. DE 33. As part of his motion to amend, Plaintiff attached his opposition papers to Defendants' motions to dismiss. *See* DE 33. Although the proposed Amended Complaint contains some additional facts, the primary thrust of Plaintiff's motion is the addition of 13 named individuals and entities whom Plaintiff failed to name in his initial pleading. *See* DE 33–1 (Proposed Amended Complaint).

On October 6, 2016, Judge Bianco referred the Defendants' respective motions to dismiss as well as Plaintiff's motion to amend to this Court for a Report and Recommendation whether any of the motions should be granted. DE 37. Having carefully reviewed the factual allegations in the Complaint and other submissions by the Plaintiff, the arguments advanced by the parties in their written submissions, and the applicable case law, the Court respectfully recommends to Judge Bianco that Defendants' motion to dismiss Plaintiff's Complaint be GRANTED and that Plaintiff's motion to amend his complaint

be GRANTED, in part, and DENIED, in part, in accordance with this Report and Recommendation. Specifically, the Court recommends that Plaintiff be permitted to amend his Complaint to: (1) name Chief Turhan Gumusdere and Officers John Doe # 1 and John Doe # 2 as Defendants; and (2) assert constitutional deprivations of his Fourteenth Amendment Due Process rights based upon his transfer from Riker's to Rockland and his failure-to-protect claim.

### III. STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679, 129 S.Ct. 1937; *see id.* at 678, 129 S.Ct. 1937 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955)). Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678, 129 S.Ct. 1937 (citing *Twombly*, 550 U.S. at 556–57, 127 S.Ct. 1955) (internal citations omitted).

In adjudicating a Rule 12(b)(6) motion to dismiss, the Court must limit itself to facts alleged in the complaint, which are accepted as true; to documents attached to the complaint as exhibits or incorporated in the complaint by reference; to matters of which judicial notice may be taken; or to documents whose terms and effect are relied heavily upon in the complaint and, thus, are rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *see also ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014).

■ In addition, where, as here, a plaintiff is proceeding *pro se*, the complaint must be considered under a more lenient standard than that accorded "formal pleadings drafted by lawyers." *Bellamy v. Mt. Vernon Hosp.*, No. 07 Civ. 1801, 2009 WL 1835939, at *3 (S.D.N.Y. June 26, 2009) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Therefore, a court must construe a *pro se* plaintiff's pleading broadly and interpret it to raise the strongest arguments that it suggests. *See Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145–46 (2d Cir. 2002); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (holding that when a plaintiff proceeds *pro se*, the district court "is obliged to construe his pleadings liberally" and noting that "the dismissal of a *pro se claim* as insufficiently pleaded is appropriate only in the most unsustainable of cases."). "However, mere conclusions of law or unwarranted deductions need not be accepted." *Alston v. Sebelius*, No. 13-CV-4537, 2014 WL 4374644, at *5 (E.D.N.Y. Sept. 2, 2014) (internal quotation marks omitted).

■ Although "courts generally will not accept factual allegations raised for the first time in opposition to a motion to dismiss, some courts have construed the mandate to read a *pro se* plaintiff's papers liberally as allowing for consideration of such allegations." *Rolle v. Educ. Bus Transp., Inc.*, No. CV 13-1729, 2014 WL 4662256, at *9 (E.D.N.Y. Aug. 8, 2014), *report and recommendation adopted*, No. 13-CV-1729, 2014 WL 4662267 (E.D.N.Y. Sept. 17, 2014); *Ibok v. Sector*, No. 05-CV-6584, 2006 WL 302336, at * 1, n.1 (S.D.N.Y. Feb. 9, 2006) ("The Court may consider the factual allegations in plaintiff's Response to supplement those in his

complaint because of the liberal standard afforded to the pleadings of *pro se* litigants." (citations omitted)). In the instant case, because Plaintiff is proceeding in a *pro se* capacity, and in furtherance of its obligation to construe *pro se* pleadings liberally, the Court will consider the factual allegations set forth in Plaintiff's opposition papers to the extent such facts are related to and consistent with his Complaint. *Rosario v. New York City*, No. 12 Civ. 4795, 2013 WL 2099254, at *1–2 n. 1 (S.D.N.Y. May 15, 2013) ("[B]ecause [plaintiff] is proceeding *pro se*, the Court also considers factual allegations contained in [his] two submissions in opposition to defendants' motion to dismiss, to the extent consistent with the Complaint."); *Harris v. NYU Langone Med. Ctr.*, No. 12 CIV. 0454, 2013 WL 3487032, at *2 (S.D.N.Y. July 9, 2013), *report and recommendation adopted as modified*, No. 12 CIV. 0454, 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013) ("[B]ecause Harris is proceeding *pro se*, the Court may consider factual allegations contained in her submissions in opposition to Defendants' motions to dismiss, to the extent they are consistent with the [Complaint]."); *Sommersett v. City of New York*, 09–CV–5916, 2011 WL 2565301, at *3 (S.D.N.Y. 2011) ("where a *pro se* plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations"); *see also Malik v. City of New York*, No. 11 Civ. 6062, 2012 WL 3345317, at *5 (S.D.N.Y. Aug. 15, 2012) ("The mandate to read a pro se plaintiff's papers liberally, however, makes it appropriate to consider factual allegations in Malik's opposition papers, in addition to those in his Complaint, in resolving the motion to dismiss.") (internal citations omitted); *Aponte v. Buono*, No. 11 Civ. 1077, 2011 WL 6812924, at *3 (E.D.N.Y.

Dec. 28, 2011); *Cusamano v. Sobek*, 604 F.Supp.2d 416, 461 (N.D.N.Y. 2009).

## IV. DISCUSSION

### A. Failure to Exhaust Administrative Remedies

#### 1. Legal Standard Under the PLRA

The PLRA provides in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' Prisoners must utilize the state's grievance procedures, regardless of whether the relief sought is offered through those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 519, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). In addition, in finding that the PLRA applies to all inmate actions concerning prison life, *see Porter*, 534 U.S. at 532, 122 S.Ct. 983, the Supreme Court "did not distinguish between pretrial and post-trial detainees." *United States v. Khan*, 540 F.Supp.2d 344, 349 (E.D.N.Y. 2007); *United States v. Al–Marri*, 239 F.Supp.2d 366, 367, n.1 (S.D.N.Y. 2002); *Baez v. Parks*, No. 02 CIV.5821, 2004 WL 1052779, at *5 (S.D.N.Y. May 11, 2004) ("[T]he PLRA's strict exhaustion requirement does indeed apply in actions brought by pretrial detainees."). As such, similar to a convicted prisoner, a pre-trial detainee is generally required to exhaust his administrative remedies prior to filing an action in federal court. *See Baez v. Parks*, No. 02 CIV. 5821, 2004 WL 1052779, at *5 (S.D.N.Y. May 11, 2004).

■ Despite the PLRA's strict application, the Supreme Court has made clear that prisoners "are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). Rather, "failure to exhaust is an affirmative defense under the PLRA" that must be raised and proven by defendants. *Id.* "Dismissal under Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint." *Roland v. Smith*, 907 F.Supp.2d 385, 388 (S.D.N.Y. 2012) (citing *McCoy v. Goord*, 255 F.Supp.2d 233, 251 (S.D.N.Y. 2003)); *see Jandres v. Armor Health Care Inc.*, No. 12-CV-3132, 2014 WL 1330655, at *4 (E.D.N.Y. Mar. 31, 2014); *Barrett v. Armor Corr. Health, Inc.*, No. 13-CV-1063, 2014 WL 1220756, at *5 (E.D.N.Y. Mar. 20, 2014) (quoting *Rivera v. Anna M. Kross Ctr.*, No. 10-CV-8696, 2012 WL 383941, at *2 (S.D.N.Y. Feb. 7, 2012)).

■ Even where a plaintiff does not formally exhaust his administrative remedies, exhaustion may be excused under certain circumstances. *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). In particular, exhaustion may be excused if: (1) administrative remedies were not actually available to the prisoner; (2) defendants' own actions inhibited exhaustion, constituting a waiver of the defense; or (3) "special circumstances" justify non-exhaustion. *Id.*; *see, e.g, Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011); *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006).[4]

### 2. Application to the Facts

Defendant Sposato[5] states that Plaintiff's Complaint must be dismissed based upon a failure to exhaust his administrative remedies since he "failed to plead exhaustion of administrative remedies ... [and] having not pled compliance with any grievance procedures within the correctional center, Plaintiff has failed to plead exhaustion of those procedures." Memorandum of Law in Support of County Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil

---

4. The Second Circuit has reserved the question of whether this test, set forth in *Hemphill*, applies in light of the Supreme Court's interpretation of the PLRA's exhaustion requirement in *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). *See Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011); *Macias v. Zenk*, 495 F.3d 37, 43 n.1 (2d Cir. 2007). However, "[c]ourts in this circuit have acknowledged the tension between *Woodford* and *Hemphill*, but have continued to use the *Hemphill* test in the absence of circuit authority to the contrary." *Kasiem v. Switz*, 756 F.Supp.2d 570, 576 n.5 (S.D.N.Y. 2010); *see also Smith v. City of New York*, No. 12 Civ. 3303, 2013 WL 5434144, at *9 (S.D.N.Y. Sept. 26, 2013) ("In the absence of a clear indication that *Hemphill* has been overruled, this Court has no choice but to treat it as good law."). Moreover, the Second Circuit has continued to hold post-*Woodford* that an inmate's failure to comply with the exhaustion requirement may be excused on the grounds enumerated in *Hemphill*. *See Messa*, 652 F.3d at 309 (citing the *Hemphill* factors). Thus, this Court will similarly consider the exceptions provided in *Hemphill*.

5. The Court points out that Defendant Ponte did not raise failure to exhaust administrative remedies under the PLRA as an affirmative defense and therefore the defense as to Defendant Ponte is deemed waived. *See Arnold v. Goetz*, 245 F.Supp.2d 527, 532 (S.D.N.Y. 2003) (acknowledging that failure to exhaust administrative remedies must be asserted as an affirmative defense and "[f]or that reason, the defense may be waived by a defendant, or forfeited by the failure to raise defense") (internal quotations and citation omitted); *Williams v. King*, 56 F.Supp.3d 308, 321 (S.D.N.Y.), *order clarified*, 56 F.Supp.3d 389 (S.D.N.Y. 2014) ("Failure to exhaust is an affirmative defense that may be waived if not raised by the defendants.").

Procedure ("Def. Sposato's Mem.") [DE 18] at 7.

In opposition, Plaintiff states that he approached Internal Affairs on a number of occasions and drafted written statements concerning his grievances. Pl.'s Opp'n at 6. However, despite telling Plaintiff his complaints would be investigated, Internal Affairs never provided Plaintiff with a response. *Id.* Plaintiff also states that he spoke with an Assistant District Attorney as well as a detective from Nassau County regarding his claims involving excessive force and sexual assault by corrections officers and that he was told that they would conduct an investigation into these allegations. *Id.* According to Plaintiff, he filed "many grievances" concerning issues he encountered while housed at NCCC and the fact that he feared for his life. *Id.* Consequently, Plaintiff claims that he has "exhausted [his] remedies." *See* Compl. Section II.

In reply, Defendant Sposato argues that "Plaintiff's generalized claims within his opposition that he exhausted his administrative remedies is contradicted by the more specific allegation within his complaint that he did not complaint [*sic*] to prison authorities" and that because Plaintiff's "statements are wholly inconsistent," dismissal for failure to exhaust is appropriate. Defendant Sposato's Reply Memorandum of Law in Further Support of County Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Def. Sposato's Reply") [DE 32] at 4.

At the outset, the Court points out that Defendant's argument that Plaintiff's failure to plead exhaustion should result in dismissal ignores the fact that Plaintiff is not required to plead specific facts in the Complaint setting forth exhaustion. *Jones*, 549 U.S. at 216, 127 S.Ct. 910; *Roland v. Smith*, 907 F.Supp.2d 385, 388 (S.D.N.Y.

2012) ("inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Rather, once again, failure to exhaust is an affirmative defense and, as such, "the defendants have the burden of proving that [Plaintiff's] [ ] claim[s] ha[ve] not been exhausted." *Key v. Toussaint*, 660 F.Supp.2d 518, 523 (S.D.N.Y. 2009); *Bennett v. James*, 737 F.Supp.2d 219, 225 (S.D.N.Y. 2010), *aff'd*, 441 Fed.Appx. 816 (2d Cir. 2011); *see, e.g.*, *Land v. Kaufman*, No. 07 Civ. 8070, 2009 WL 1106780, at *5 (S.D.N.Y. Apr. 23, 2009); *Brown v. Austin*, No. 05 Civ. 9443, 2009 WL 613316, at *5 (S.D.N.Y. Mar. 4, 2009).

Although Defendant Sposato appears to assert in his reply that Plaintiff's contradictory statements require dismissal for failure to exhaust, this argument misses the mark. Plaintiff's Complaint—which was made using a standardized 42 U.S.C. § 1983 complaint form—claims that: (1) a grievance procedure existed at NCCC; and (2) he presented factual allegations in accordance with the applicable grievance procedures. Compl. Section II. Thus, despite Defendant Sposato's assertion that a contradiction exists between what Plaintiff states in the Complaint regarding contacting prison authorities about his grievances versus the statements he made in his opposition papers, the Court does not agree. The question on the form Complaint stated "[i]f there is *no* prison grievance procedure in the institution, did you complain to prison authorities?" *Id.* (emphasis added). Plaintiff answered "no" to this question, purportedly because he noted that a grievance procedure *did* exist. *See id.* In any event, the somewhat generalized assertions in Plaintiff's opposition, which he interposes to illustrate exhaustion, appear primarily to identify contact he had with outside agencies as opposed to prison authorities (*i.e.*, Internal Affairs and District

Attorney's Office). Pl.'s Opp'n at 6. The Court finds no clear contradiction in Plaintiff's statements concerning exhaustion which would otherwise warrant dismissal on that basis.

■ Notwithstanding the above discussion, whether non-exhaustion is apparent from the face of the Complaint thereby warranting dismissal, presents a closer question. *See Roland*, 907 F.Supp.2d at 388 As noted, because prisoners are not required to affirmatively plead exhaustion, courts in this Circuit have held "the fact that [the p]laintiff has provided only the first step of his grievance process does not necessarily mean that he did not comply with the additional steps." *Jandres*, 2014 WL 1330655, at *4; *see Groenow v. Williams*, No. 13 CIV. 3961, 2014 WL 941276, at *3 (S.D.N.Y. Mar. 11, 2014) ("[w]here a prisoner indicates that he has taken some steps toward exhaustion, district courts will not normally infer from his silence as to any remaining steps that he has not fully exhausted") (collecting cases). In particular, a court should not dismiss on exhaustion grounds where the allegations in the complaint indicate only that the plaintiff has "initiated" the grievance process but "ha[s] not received a response" from prison officials. *Groenow*, 2014 WL 941276, at *4 (holding that "[a]lthough 'the complaint may lack specifics as to how the plaintiff grieved his claim, that is not a valid basis for dismissal under *Jones'* '") (quoting *Johnson v. Westchester Cty. Dep't of Corr. Med. Dep't*, No. 10 Civ. 6309, 2011 WL 2946168, at *2 (S.D.N.Y. July 19, 2011) (declining to dismiss prisoner's complaint where he alleged only that he had "filed a complaint within the office of the warden")).

■ In the instant case, the Complaint indicates that a grievance procedure was available to Plaintiff while he was housed at NCCC and that Plaintiff presented fac-

tual allegations as part of the grievance process. Compl. Section II. Specifically, Plaintiff states that he "wrote several grievance[s] regarding [ ] being housed [at NCCC]" as well as grievances asserting that he feared for his life. *Id.* In addition, Plaintiff states that he was told by the grievance coordinator that "it was [a] non-grievable issue" and that he should contact Riker's. *Id.* In his opposition, Plaintiff further claims that he provided statements concerning his grievances to Internal Affairs as well as the Nassau County District Attorney's Office and reiterates that he "wrote many grievances." Pl.'s Opp'n at 6. In light of these factual allegations, which the Court is obliged to accept as true at this stage of the proceedings, Plaintiff appears to have least initiated the grievance process. Indeed, a reasonable inference can be drawn that Plaintiff filed grievances concerning some of the incidents set forth in his Complaint and that these issues were either ignored or not acted upon and no response was ever received. *See* Compl. Section II. Moreover, it is not entirely clear from the face of the Complaint whether the grievance coordinator advised Plaintiff that (1) only his complaint regarding transfer to NCCC was not subject to the grievance procedures, or (2) that all his grievances concerning "being housed [at NCCC]" were not within the purview of these procedures. At this juncture, then, the Court cannot say that Plaintiff unequivocally failed to comply with any remaining grievance procedures necessary to exhaust his claims. *See Groenow*, 2014 WL 941276, at *3. Although the Complaint lacks a degree of specificity concerning how Plaintiff complied with NCCC's grievance procedures, that in itself is not a sufficient basis to dismiss Plaintiff's Complaint. *See Johnson*, 2011 WL 2946168, at *2; *Parris v. N.Y. State Dep't Corr. Servs.*, 947 F.Supp.2d 354, 361 (S.D.N.Y. 2013)

(finding that "ambiguity [as to whether plaintiff fully grieved his claim] is not a valid basis for dismissal [of a complaint]"); *Huggins v. Schriro*, No. 14 CV 6468, 2015 WL 7345750, at *3 (S.D.N.Y. Nov. 19, 2015), *report and recommendation adopted*, No. 14 CV 06468, 2016 WL 680822 (S.D.N.Y. Feb. 18, 2016) ("Because prisoners are not required to plead compliance with prison grievance procedures in their complaints, courts in this Circuit have denied motions to dismiss based on exhaustion where ambiguity exists as to whether a plaintiff exhausted his administrative remedies. Where a prisoner indicates that he has taken *some* steps toward exhaustion, district courts will normally not infer from his silence that he failed to take the remaining steps that full exhaustion would require.") (emphasis in original).

In any event, several additional factors weigh against a finding of non-exhaustion at this early stage of the case. First, although Defendant Sposato refers generally to Plaintiff's obligation to fully exhaust his administrative remedies, Def. Sposato's Mem. at 7, counsel "fail[s] to describe how an inmate whose grievance is simply ignored by the prison can appeal and thereby satisfy the exhaustion requirement." *Randolph v. N.Y.C. Dep't of Corr.*, No. 05 Civ. 8820, 2007 WL 2660282, at *7 (S.D.N.Y. Sept. 7, 2007). Second, assuming such a procedure exists for unaddressed grievances, Plaintiff has not indicated that he is aware of that procedure and Defendant does not contend otherwise. *See generally Groenow*, 2014 WL 941276, at *4; *but see Wade v. Fischer*, No. 10 CV 5417, 2012 WL 1118206, at *2 (E.D.N.Y. Mar. 30, 2012) ("Plaintiff cannot deny, however, his awareness of § 701.8(g) DOCS Directive # 4040, which he himself submits to the Court, setting forth in pertinent part: 'If the superintendent fails to respond within the required twenty-five day

time limit the grievant may appeal his/her grievance to CORC. This is done by filing a Notice of Decision to Appeal (Form # 2133) with the inmate grievance clerk.' "). Third, and perhaps most importantly, at no point does Plaintiff affirmatively state in any of his submissions "that he failed to follow all the required grievance procedures." *Randolph*, 2007 WL 2660282, at *7; *see, e.g., Groenow*, 2014 WL 941276, at *4. " '[A] *pro se* plaintiff's pleading references to various efforts that he has made to bring alleged prison violations to the attention of the prison authorities cannot be treated as tantamount to an admission that he had not exhausted his remedies.' " *Groenow*, 2014 WL 941276, at *3 (quoting *Wesley v. Muhammad*, No. 05 Civ. 5833, 2008 WL 123812, at *3 (S.D.N.Y. Jan. 10, 2008), *report and recommendation adopted*, 2008 WL 236974 (S.D.N.Y. Jan. 28, 2008)); *Huggins*, 2015 WL 7345750, at *3. Accordingly, the Court finds that, based on Plaintiff's allegations at this stage of the proceedings, it is unclear exactly what Plaintiff intends to assert concerning exhaustion "and therefore non-exhaustion is not apparent." Ultimately, dismissal on such procedural grounds is inappropriate. *Jandres*, 2014 WL 1330655, at *4; *see Groenow*, 2014 WL 941276, at *4.

### B. Plaintiff's Claims Arising Under 42 U.S.C. § 1983

#### 1. Legal Standard Applicable to § 1983 Claims

Section 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities se-

cured by the Constitution and laws, shall be liable to the party injured ...

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must " 'allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.' " *Rae v. Cty. of Suffolk*, 693 F.Supp.2d 217, 223 (E.D.N.Y. 2010) (quoting *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999)); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Section 1983 does not create any independent substantive rights but rather is a vehicle to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

 In addition, it is well-settled in this Circuit "that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (citation omitted)); *see also Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009). "In the context of a § 1983 action, personal involvement means 'direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates.' " *Barrett*, 2014 WL 1220756, at *5 (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)). A complaint asserting a § 1983 claim which does not allege facts establishing the personal involvement "fails as a matter of law." *Gaines v. Armor Health Care, Inc.*, No. 12-CV-5663, 2013 WL 6410311, at *3 (E.D.N.Y. Dec. 9, 2013) (citing *Costello v. City of Burlington*, 632 F.3d 41, 48–49 (2d Cir. 2011)).

Although some courts have questioned the continuing applicability of these factors based upon the heightened pleading requirements set forth in *Iqbal*, *see Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801, 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third *Colon* categories pass *Iqbal*'s muster—a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred."), *aff'd* 387 Fed.Appx. 55 (2d Cir. 2010)); *Newton v. City of New York*, 640 F.Supp.2d 426, 448 (S.D.N.Y. 2009) ("[P]assive failure to train claims pursuant to section 1983 have not survived" post-*Iqbal*), the Second Circuit has not yet ruled on the issue. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," but declining to reach the issue).

Notwithstanding the Second Circuit's silence, the majority of courts considering the issue have determined that "even after the U.S. Supreme Court's decision in *Iqbal*, these 'categories supporting personal liability of supervisors still apply as long as they are consistent with the requirements applicable to the particular constitutional provision alleged to have been violated.' " *Hernandez v. Goord*, No. 01 Civ. 9585, 2013 WL 2355448, at *7 (S.D.N.Y. May 29, 2013) (quoting *Qasem v. Toro*, 737 F.Supp.2d 147, 152 (S.D.N.Y. 2010)); *see also Ramey v. Perez*, No. 13 Civ. 00017, 2014 WL 407097, at *4 (S.D.N.Y. Jan. 31, 2014) ("*Colon* remains the standard in this Circuit for deciding whether personal involvement by supervisory officials is sufficiently alleged in the context of the Eighth Amendment."); *Mercier v. Kelly*, No. 10 Civ. 7951, 2013 WL 4452486, at *6

(S.D.N.Y. Aug. 19, 2013) ("[T]he majority view is where 'the constitutional claim does not require a showing of discriminatory intent ... the personal involvement analysis set forth in *Colon v. Coughlin* may still apply.' ") (quoting *Shepherd v. Powers*, No. 11 Civ. 6860, 2012 WL 4477241, at *10 (S.D.N.Y. Sept. 27, 2012)); *Martinez v. Perilli*, No. 09 Civ. 6470, 2012 WL 75249, at *4 (S.D.N.Y. Jan. 5, 2012) ("[T]he five *Colon* categories still apply after *Iqbal*."); *Morgan v. Comm'r Dzurenda*, No. 3:14-CV-966, 2015 WL 5722723, at *7 (D. Conn. Sept. 29, 2015) ("Because it is unclear as to whether *Iqbal* overrules or limits *Colon*, the Court will continue to apply the categories for supervisory liability set forth by the Second Circuit.")

Based upon the fact that alleging "personal involvement" (*i.e.*, the individual(s) directly responsible for the deprivation of a plaintiff's rights) serves as a condition precedent to any award of damages, the Court will first determine whether Plaintiff has pleaded facts which sufficiently allege the requisite personal involvement on the part of each Defendant before turning to the substantive merits of Plaintiff's claims. *See Davis v. Cty. of Nassau*, 355 F.Supp.2d 668, 675 (E.D.N.Y. 2005) ("Assuming without deciding that [plaintiff] has adequately alleged that his right to non-deliberately indifferent treatment of his serious medical needs was violated by *someone*, the key question at this juncture is whether [plaintiff's] complaint also adequately indicates why *the defendants* should be liable for the violation.").

### 2. Whether Defendants Were "Personally Involved" in the Alleged Constitutional Deprivations

In reviewing Plaintiff's form Complaint, the following three distinct references are made to Defendants Ponte and Sposato: (1) in the caption; (2) in the section asking Plaintiff to list the names and addresses of all defendants; and (3) in a statement in Section IV of the Complaint which precedes Plaintiff's description of his claims in which he states that his "due process rights [were] violated by both Joseph Ponte and Michael Sposato." Compl. Section IV. Importantly, Plaintiff does not allege that either individual Defendant was directly involved in any of the incidents of which Plaintiff complains nor the scope of any such involvement. *See generally* Compl. Section IV. Likewise, Plaintiff's opposition papers are similarly silent as to whether a direct nexus exists between the allegations of wrongdoing and any direct involvement by Defendants. Put another way, Plaintiff has pleaded no facts (either in his Complaint or his opposition papers) showing that either Defendant directly participated in any of the alleged constitutional violations set forth in his Complaint.

Absent any recitation of facts setting forth the necessary direct involvement, Plaintiff's claims against Defendants Ponte and Sposato must fail unless he can plausibly state that either Defendant possessed the requisite supervisory liability. In order to do so, Plaintiff must allege that Defendants personally: (1) failed to remedy the wrong after being informed of it; (2) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (3) was grossly negligent in supervising subordinates who committed the wrongful acts; or, (4) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating there were ongoing unconstitutional acts. *See JCG*, 2014 WL 1630815, at *20 (citing *Colon*, 58 F.3d at 873). It is important to point out that "[s]upervisory officials cannot be held liable under section 1983 solely for the acts of their subordinates," *Morgan*, 2015 WL 5722723, at *6 (citing *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.

1985)). Rather, liability may generally only be predicated upon "the official's own individual actions." *Morgan*, 2015 WL 5722723, at *6 (quoting *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937). Further, "plaintiff must demonstrate an affirmative causal link between the inaction of the supervisory official and his injury." *Morgan*, 2015 WL 5722723, at *6 (citing *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002)). The Court must assess then the allegations in Plaintiff's Complaint as well as the statements in his opposition papers to determine whether he has plausibly alleged facts supporting supervisory liability based upon one of the above factors.

### i. Joseph Ponte

In his opposition papers, Plaintiff attempts to allege that Defendant Ponte was personally involved in the alleged constitutional deprivations. Plaintiff maintains that the New York City Department of Corrections and its Commissioner, Defendant Ponte: (1) created and allowed the continuance of an unconstitutional inmate transfer policy which permitted transfer to county facilities outside New York City; (2) was grossly negligent in supervising subordinates; and (3) failed to address Plaintiff's complaint that he feared for his life as a result of the alleged unconstitutional transfer policy. *See* Pl.'s Opp'n at 9, 11. Aside from these conclusory statements, Plaintiff does not provide the Court with any salient facts on which to analyze these conclusions. Therefore, although Plaintiff may be attempting to frame Defendant Ponte's conduct within the rubric set forth in *Colon*, Plaintiff's conclusory assertions concerning Defendant Ponte's alleged personal involvement are unavailing. Indeed, "although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotations and citation omitted). Even construing these statements liberally, as the Court is required to do when reviewing a Complaint filed by a *pro se* litigant, *see Andino v. Fischer*, 698 F.Supp.2d 362, 376 (S.D.N.Y. 2010), there are simply no factual allegations asserted which support a finding that Defendant Ponte was personally involved in any of the incidents at issue. *See, e.g., Youngblood v. City of N.Y.*, No. 15 CIV 3541, 2016 WL 3919650, at *5 (S.D.N.Y. June 27, 2016) (*pro se* "Plaintiff's bare allegations of the existence of a custom and policy and his conclusory assertion that the policy was linked to his constitutional injuries are insufficient to state a *Monell* claim."); *Carpinone v. City of New York*, No. 11 Civ. 2074, 2012 WL 760073, at *2 (S.D.N.Y. Mar. 9, 2012) ("Plaintiff offers no facts which would render plausible his allegations of a policy or custom within the New York City Police Department that was affirmatively linked to the purported constitutional violations he suffered."); *Martinez v. Queens Cty. Dist. Atty.*, No. 12-CV-06262, 2014 WL 1011054, at *15 (E.D.N.Y. Mar. 17, 2014), *aff'd*, 596 Fed. Appx. 10 (2d Cir. 2015), *cert. denied sub nom. Martinez v. Brown*, —— U.S. ——, 135 S.Ct. 1855, 191 L.Ed.2d 735 (2015) (*pro se* "Plaintiff's bald assertions that there was a conspiracy between state actors and Verizon N.Y. and T-Mobile to illegally wiretap him, without more, are insufficient to plausibly allege that these private defendants were acting under the color of state law."). In the instant case, Plaintiff "must do more than plead '[c]onclusory allegations or legal conclusions masquerading as factual conclusions[.]' " *Andino*, 698 F.Supp.2d at 376 (quoting *Gebhardt v. Allspect, Inc.*, 96 F.Supp.2d 331, 333 (S.D.N.Y. 2000)) (second alteration added). Since Plaintiff has failed to do so, the

Complaint, as currently drafted, fails to allege personal involvement as to Defendant Ponte and "this is fatal to the viability of his [ ] Complaint." *Huggins*, 2015 WL 7345750, at *5.

#### ii. Michael Sposato

■ Plaintiff fares no better in his attempts to allege personal involvement on the part of Defendant Sposato. Plaintiff maintains that Defendant Sposato was allegedly personally responsible for: (1) the care, custody, confinement and control of the NCCC facility and failed to ensure good order was maintained; (2) the actions of NCCC's officers and employees such as in situations constituting the use of excessive force and sexually assaulting inmates; and (3) the deliberate indifference of other prison officials in failing to protect plaintiff from harm at the hands of other prisoners. *Id.* at 3.

Initially, the Court reiterates that "[s]upervisory officials cannot be held liable under section 1983 solely for the acts of their subordinates," *Morgan*, 2015 WL 5722723, at *6 (citing *Ayers*, 780 F.2d at 210). Rather, liability may generally only be predicated upon "the official's own individual actions." *Morgan*, 2015 WL 5722723, at *6 (quoting *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937). Further, "plaintiff must demonstrate an affirmative causal link between the inaction of the supervisory official and his injury." *Morgan*, 2015 WL 5722723, at *6 (citing *Poe*, 282 F.3d at 140). However, other than interposing conclusory assertions, Plaintiff has otherwise

failed to set forth sufficient facts showing how Defendant Sposato was personally involved in carrying out the constitutional deprivations of which Plaintiff complains. Thus, in light of the fact that Plaintiff's mere conclusions fail to properly allege personal involvement by Defendant Sposato based upon any of the *Colon* factors, Plaintiff's constitutional claims against Defendant Sposato must fail. *See Huggins*, 2015 WL 7345750, at *5; *Andino*, 698 F.Supp.2d at 376; *see also Alsaifullah v. Travis*, 160 F.Supp.2d 417, 420 (E.D.N.Y. 2001) ("even a *pro se* complaint must contain specific facts supporting its conclusions.") (internal citation omitted).

#### C. Qualified Immunity

Defendants also seek to dismiss Plaintiff's claims on the basis of their qualified immunity.[6] *See* Memorandum of Law in Support of Defendant Ponte's Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ("Def. Ponte's Mem.") at 7–8; Def. Sposato's Mem. at 8–9. The Court has already determined that neither Plaintiff's Complaint, nor the facts alleged in Plaintiff's opposition papers adequately allege the requisite personal involvement of either named Defendant. As such, dismissal is warranted on that basis alone and the Court need not otherwise address Defendants' alleged entitlement to the affirmative defense of qualified immunity with respect to these Defendants.[7] *McIntosh v. United States*, No. 14-CV-7889, 2016 WL 1274585, at *20 (S.D.N.Y. Mar. 31, 2016) (finding "no need to address the qualified

---

6. Although it is not clear from Plaintiff's Complaint, it appears Defendants have interpreted Plaintiff to have filed suit against them in their individual capacities as opposed to their official capacities since "qualified immunity is a defense only on a claim asserted against an individual in his personal capacity." *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012).

7. The Court points out that although an affirmative defense such as qualified immunity must generally be asserted in an answer, *see* Fed. R. Civ. P. 12(b), the Second Circuit has opined that "we see no reason why even a traditional qualified immunity defense may not be asserted on a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *see*

immunity argument" put forth by defendants where the court had already dismissed plaintiff's claims "for failure to allege personal involvement."); *see Kelsey v. Cty. of Schoharie*, 567 F.3d 54, 62 (2d Cir. 2009) ("When the facts, viewed in light most favorable to the plaintiff, do not demonstrate that an officer's conduct violated a constitutional right, the court need not further pursue the qualified immunity inquiry."); *see also Dawson v. City of N.Y.*, No. 13-CV-5956, 2014 WL 5020595, at *2 (S.D.N.Y. Oct. 8, 2014) (same); *Cooper v. Marrero*, No. 11-CV-9260, 2013 WL 2529723, at *5 (S.D.N.Y. June 11, 2013) (same).[8]

## D. *Plaintiff's Substantive Claims*

Although the Court finds that Plaintiff's Complaint should be dismissed as to De-

fendants Ponte and Sposato based upon a failure to adequately plead that either Defendant was personally involved in any of the constitutional deprivations of which he complains, in an abundance of caution, and to determine whether Plaintiff should be afforded the opportunity to amend his Complaint, the Court will nevertheless address the underlying merits of each of Plaintiff's claims.

### 1. Unlawful Facility Transfers

Plaintiff alleges that on July 15, 2016, he was transferred to NCCC from Riker's to be alternatively housed, but was not informed as to the reason for the transfer nor afforded procedural protections prior to being moved. Compl. Section IV ¶ 1. In addition, on April 14, 2016, Plaintiff states he was transferred from NCCC to Rock-

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."). However, generally "it is very difficult for such a defense to succeed at the pleading stage" given the "fact specific inquiry" involved. *Collins v. Ferguson*, 804 F.Supp.2d 134, 140–41 (W.D.N.Y. 2011); *see Charles v. New York State DOCS*, No. 07-CV-1274, 2009 WL 890548, at *10 (N.D.N.Y. Mar. 31, 2009) ("The defense [of qualified immunity] must be based on facts appearing on the face of the complaint." (citing *Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir. 2008)). As such, as a practical matter, " '[i]t is generally premature to address the defense of qualified immunity in a motion to dismiss pursuant to [Rule] 12(b)(6)' "). *Bernstein v. City of New York*, No. 06 Civ. 895, 2007 WL 1573910, at *9 (S.D.N.Y. 2007) (quoting *Walker v. Mendoza*, No. 00 Civ. 93, 2000 WL 915070, at *7 (E.D.N.Y. June 27, 2000)); *see Taylor v. Wilde*, No. 11-CV-3608, 2012 WL 2860999, at *4 (E.D.N.Y. July 10, 2012) ("any adjudication as to the applicability of the qualified immunity affirmative defense would be premature since resolution of qualified immunity depends on the determination of certain factual questions that cannot be answered at this stage of the

litigation.") (internal quotations, citation and alteration omitted).

8. The Court previously determined that it would consider Officer Foley as a named Defendant in this action since Plaintiff clearly identified him as being personally involved in the "pat frisk" incident. As such, the Court has construed Plaintiff's *pro se* pleadings "to have asserted claims against [Officer Foley], despite the failure to list [him] in the caption." *JCG*, 2014 WL 1630815, at *16; *see supra* n. 4 (discussing Officer Foley's status as a viable Defendant notwithstanding his omission from the caption). However, since the County Attorney's Office—which presumably would represent Officer Foley in this matter—has not raised the defense of qualified immunity on his behalf in the motion to dismiss, the Court will not consider its applicability as to Officer Foley in the first instance. *See Blissett v. Coughlin*, 66 F.3d 531, 538 (2d Cir. 1995) (recognizing that qualified immunity "is an affirmative defense, [and] it is incumbent upon the defendant to plead, and adequately develop, a qualified immunity defense."); *Galvin v. Lloyd*, 663 F.Supp. 1572, 1578 (D. Conn. 1987) ("Qualified immunity is an affirmative defense that must be pleaded by the official claiming it.") (quoting *Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984)).

land. It appears Plaintiff is claiming that these transfers were "intended as an unconstitutional punishment" and that they "deprived him of a liberty interest by subjecting [him] to more restrictive housing." Pl.'s Opp'n at 5, 9. Specifically, Plaintiff complains that he was advised only that the transfer to NCCC was "for [his] own protection" and that he did not otherwise receive a further explanation or documentation to clarify the rationale behind the move. *Id.* at 5. In addition, with respect to his transfer from Riker's to Rockland, Plaintiff states that the Assistant Chief of Riker's told him that he would be sent "far away w[h]ere you won[']t be able to complain" and within days of that conversation he was sent to RCCC. *Id.* at 8.

### i. Whether the Transfers Violated Plaintiff's Due Process Rights Under the 14th Amendment

■■■■ "The due process clause is not implicated when a pre-trial detainee is transferred from one facility to another." *Covino v. Vt. Dep't of Corr.*, 933 F.2d 128, 129 (2d Cir. 1991) (per curiam); *see Lipton v. Cty. of Orange, NY*, 315 F.Supp.2d 434, 447–48 (S.D.N.Y. 2004); *Corley v. City of N.Y.*, No. 1:14-CV-3202, 2015 WL 5729985, at *7 (S.D.N.Y. Sept. 30, 2015) ("[T]he mere transfer of a pretrial detainee within a prison population or between prisons does not give rise to a protected liberty interest under the Due Process Clause.");

*Butler v. Westchester Cty.*, No. 94 Civ. 8216, 2000 WL 335539, at *4 (S.D.N.Y. Mar. 30, 2000) ("Due process is not implicated when a pretrial detainee is transferred from one facility to another.").[9] Likewise, the Second Circuit has held that the transfer of an inmate, including a pretrial detainee, " 'to less amenable and more restrictive quarters for nonpunitive reasons' is not a right protected by the due process clause itself." *Covino*, 933 F.2d at 129 (quoting *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). Therefore, prison officials retain broad discretion to transfer pre-trial detainees, but "it is well settled that a transfer may not be made solely in retaliation for the exercise of constitutionally protected rights." *Butler*, 2000 WL 335539, at *6; *see also Davis v. Kelly*, 160 F.3d 917, 920 (2d Cir. 1998) ("A prisoner has no liberty interest in remaining at a particular correctional facility, . . . but prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights.") (internal citations omitted).

■■■■ Notwithstanding the broad discretion enjoyed by prison officials in deciding whether transfer of a pre-trial detainee is warranted, the Supreme Court has held that "pretrial detainees . . . have a due process right to be free from punishment prior to an adjudication of guilt for the

---

**9.** There is no indication from Plaintiff's opposition papers whether a trial ever took place and, if so, whether Plaintiff was found guilty of any of the charges against him—an issue which could bear upon his status as a pretrial detainee versus that of a convicted prisoner during some of the incidents described in his Complaint. In addition, in their respective motion papers, neither Defendant has specifically addressed or otherwise challenged the fact that Plaintiff was a pre-trial detainee during all the incidents in question. For purposes of this motion, then, the Court considers Plaintiff's status to be that of pretrial detainee as to all claims asserted in his

Complaint. *See Friedland v. Otero*, No. 3:11CV606, 2014 WL 1247992, at *3 (D. Conn. Mar. 25, 2014) ("[F]or the purposes of this action, the parties do not dispute that Plaintiff was a pretrial detainee from at least April 16, 2008 through August 15, 2008, when he was sentenced to five years of imprisonment on the Vernon criminal charges. Because all of the relevant events in this case, such as the incident in the prison van, Friedland's disciplinary hearing, and his High Security designation, took place during this time period, Friedland's due process claims will be evaluated by the standards governing pretrial detainees.").

incontestable reason that a pretrial detainee is presumed innocent and therefore not subjected to punishment." *Butler v. Westchester Cty.*, No. 94 Civ. 8216, 2000 WL 335539, at *3 (citing *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979)). Thus, conditions or restrictions placed upon a pre-trial detainee will generally be deemed valid so long as they do not amount to punishment or otherwise violate the Constitution. *Bell*, 441 U.S. at 536–37, 99 S.Ct. at 1873. "[I]n determining whether particular restrictions and conditions accompanying pretrial detention amount to punishment , . . [a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538, 99 S.Ct. at 1873. It follows that, "[s]o long as 'a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not without more, amount to 'punishment.'" *Butler*, 2000 WL 335539, at *3 (quoting *Bell*, 441 U.S. at 538, 99 S.Ct. at 1874). However, if the condition or restriction imposed "is not reasonably related to a legitimate governmental objective—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainee quà detainee." *Id.* at 539, 99 S.Ct. at 1874. Further, in *Bell*, the Court recognized that "in addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Id.* at 540, 99 S.Ct. at 1875.

The Court turns first to Plaintiff's transfer from Riker's to NCCC on July 16, 2015. Although Plaintiff states in concluso-ry fashion that the transfer was "intended as an unconstitutional punishment . . . [that] depraived [*sic*] [him] of a liberty interest," he fails to set forth any facts to support such an assertion. Pl.'s Opp'n at 5. In addition, the Complaint itself states that Plaintiff was transferred to be alternatively housed, but that he was not provided with an explicit reason for the transfer. Compl. Section IV ¶ 1. However, the mere fact that Plaintiff was not given a rationale for the transfer is not, without more, sufficient to show that there was a clear intent on the part of prison officials to punish him—a necessary condition to setting forth a plausible claim that his Due Process rights were violated because of the transfer itself. *See Corley*, 2015 WL 5729985, at *8 (finding plaintiff's allegations regarding his purported unconstitutional transfer insufficient where plaintiff pleaded only that "his transfer . . . was for 'undisclosed reasons,' and [where he] offer[ed] only speculation that the transfers were implemented as punitive retribution for his active participation in the jail's grievance program."); *McFadden v. Solfaro*, No. 95 CIV. 1148, 1998 WL 199923, at *10 (S.D.N.Y. Apr. 23, 1998) ("Despite Plaintiff's allegations, there is no factual evidence on the record to show that the transfer was in any way punitive and therefore violative of [plaintiff's] Due Process.").

As to Plaintiff's transfer from Riker's to Rockland on April 14, 2016, the opposition papers do provide some facts to support Plaintiff's assertion that this transfer was made with "an intent to punish." Pl.'s Opp'n at 9. Specifically, Plaintiff states that after being sent back to Riker's on April 7, 2016, he was placed in isolation despite his requests to be transferred to the general population. *Id.* at 8. Plaintiff says he was visited by Chief Turhan Gumusdere on April 9, 2016, who stated "[I]

heard you was giving my buddys [*sic*] in [N]assau a hard time you act like an asshole you gonna get treated like one." *Id.* Thereafter, Plaintiff claims he was visited by the Assistant Chief who told Plaintiff he would be sent "far away w[h]ere you won[']t be able to complain." *Id.* Within a week after Gumusdere's visit, Plaintiff was transferred to Rockland on April 14, 2016, without being provided any reason for the transfer. *Id.*

■ At this stage of the litigation, Plaintiff need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1987 (citing *Twombly,* 550 U.S. at 556–57, 127 S.Ct. 1955) (internal citations omitted). Here, taking all facts alleged as true, and drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has adequately stated a Due Process claim as against Chief Gumusdere based upon his transfer from Riker's to Rockland.[10] The facts alleged permit the inference that Plaintiff was transferred from Riker's to Rockland because he was "complaining" to prison officials, including Ms. King, the Executive Director, concerning his placement in isolation. The transfer action therefore could have been taken with the intent to punish. Pl.'s Opp'n at 8. Shortly after speaking with Chief Gumusdere and the Assistant Chief—both of whom made threatening statements to Plaintiff regarding his problematic behavior (*i.e.,* that if he "acted like an a\*\*hole" he would be treated like one and that he would be sent "far away" due to his constant complaining)—Plaintiff was transferred to Rockland. Although somewhat of a close question, the temporal proximity of Gumusdere's and the Assistant Chief's statements to the actual transfer is sufficient to draw an inference in favor of the Plaintiff that a Due Process violation has been adequately stated, anamely, that the transfer took place because of an intent to punish on the part of Chief Gumusdere. *But see Butler v. N.Y. State Corr. Dep't,* No. 94 CIV. 5054, 1996 WL 438128, at \*5 (S.D.N.Y. Aug. 2, 1996) (finding plaintiff failed to plead a Due Process violation based upon a transfer between correctional facilities where "[n]either the original complaint nor the proposed amended complaint alleges any punitive intent behind the transfer, nor does plaintiff allege any facts that would support an inference of such an intent.").[11] Although it

10. Chief Turhan Gumusdere is not identified in the caption of Plaintiff's Complaint. However, since Gumusdere is explicitly identified in Plaintiff's opposition memorandum as being involved in the alleged Constitutional violation, the Court finds that Gumusdere is a proper party to this lawsuit. *See supra* n. 4; *Rice,* 720 F.2d at 1085 ("[T]he question of whether a defendant is properly in a case is not resolved by merely reading the caption of a complaint. Rather, a party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant."); *JCG,* 2014 WL 1630815, at \*16 ("courts have found *pro se* complaints to sufficiently plead claims against defendants not named in the caption when there are adequate factual allegations to establish that the plaintiff intended them as defendants").

11. To the extent Plaintiff attempts to create a nexus between his transfer and an assigned administrative classification pursuant to a state statute or regulation, such a claim is not viable. Although states can effectively create an independent Fourteenth Amendment liberty interest through the enactment of statutes or regulations governing prison transfers, "Courts have found that New York laws and regulations give prison officials broad discretion to transfer pretrial detainees between facilities regardless of administrative classifications." *Corley,* 2015 WL 5729985, at \*8; *see, e.g., Cooper v. City of New York,* No. 13 Civ. 7590, 2014 WL 5315074, at \*4 (S.D.N.Y. Oct. 17, 2014) ("Judges of this District have analyzed relevant New York statutes and regulations and determined that they do not give rise to a protectable liberty interest regarding

is an open question whether Plaintiff may ultimately meet his burden of proof at either the summary judgment phase or at trial, at this early stage of the proceedings, he has at least satisfied the flexible plausibility standard set forth in *Iqbal* by pleading facts from which an inference can be drawn that the transfer from Riker's to Rockland was done in retaliation for his exercise of his constitutionally protected rights (*i.e.*, filing grievances). As such, Plaintiff should be permitted the opportunity to come forward with sufficient evidence to support this due process claim.

### ii. Whether the Transfers Violated Plaintiff's Right to Counsel Under the 6th Amendment

Plaintiff asserts that his Sixth Amendment right to counsel was infringed as a result of the facilities transfers. Compl. Section IV ¶ 1. Specifically, Plaintiff claims that he was deprived of access to counsel because: (1) he could not place free telephone calls to his attorney; (2) his attorney was not able to visit him given the distances involved once he was transferred from Riker's; and (3) no videoconference facilities were provided to facilitate communication. *Id.*; Pl.'s Opp'n at 5, 9.

██ "[P]retrial detainees need access to the courts and counsel ... to defend against the charges brought against them." *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001) (citations omitted). As such, the Second Circuit has determined that a pre-trial detainee's Sixth Amendment rights are infringed when prison regulations "unjustifiably obstruct," "infringe," "unreasonably burden," or "signif-

icantly interfere" with the detainee's access to counsel. *Id.* at 187; *see Osgood v. Amato*, No. 12-CV-565, 2013 WL 3777189, at *6 (N.D.N.Y. July 17, 2013); *Alster v. Goord*, 745 F.Supp.2d 317, 340–41 (S.D.N.Y. 2010) ("prison regulations restricting pretrial detainees' contact with their attorneys violate the Sixth Amendment where they *unreasonably* burden[ ] the inmate's opportunity to consult with his attorney and to prepare his defense.") (internal quotations and citation omitted) (emphasis and alteration in original).

██ Even construing Plaintiff's access to counsel claims liberally—as the Court is required to do here—Plaintiff's claim rests solely on conclusory allegations that his access to counsel was infringed, without supporting such conclusions with relevant facts. Specifically, Plaintiff does not set forth the persons directly involved in the Constitutional deprivation, the prison policy or regulation at issue which unreasonably burdened Plaintiff's access to counsel, the timeframe within which any such requests for counsel were made, how such requests were handled and whether Plaintiff suffered these grievances both at NCCC and Rockland. *See Osgood*, 2013 WL 3777189, at *6 (dismissing *pro se* plaintiff's Sixth Amendment access to counsel claim where conclusory assertions were not supported by salient facts setting forth the alleged deprivation). Because conclusory assertions are insufficient to state a valid claim for relief which is plausible on its face, the Court respectfully recommends to Judge Bianco that Plain-

---

the administrative classification of inmates."); *Caldwell v. Dep't of Corr. for City of New York*, No. 14 CV 5551, 2015 WL 428033, at *5 (E.D.N.Y. Jan. 30, 2015) (collecting cases); *Rosario v. Fischer*, No. 11 Civ. 4617, 2012 WL 4044901, at *11 (S.D.N.Y. Aug. 28, 2012), *report and recommendation adopted*, No. 11

Civ. 4617, 2012 WL 6681695 (S.D.N.Y. Dec. 20, 2012) (finding that the applicable laws and regulations do not create a liberty interest against transfer "since New York State regulations do not substantively restrict prison officials' authority to transfer pretrial detainees").

tiff's Sixth Amendment claim be dismissed.[12]

### 2. Sexual Abuse Claim

Plaintiff alleges that on September 15, 2015, in conjunction with a search of his cell, he was handcuffed and shackled in preparation for a "pat frisk." Compl. Section IV ¶ 2. According to Plaintiff, Officer Foley conducted the "pat frisk." *Id.* Plaintiff asserts that while conducting the search of his person, Officer Foley allegedly took his hand and felt in between Plaintiff's buttocks, after which he removed his fingers and told Plaintiff that he "smell[ed] sweet." *Id.*; *see* Pl.'s Opp'n at 3. Plaintiff maintains that Officer Foley's conduct amounted to a sexual assault. Compl. Section IV ¶ 2.

■ The Second Circuit has found that "sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." *Boddie v. Schnieder*, 105 F.3d 857, 860–61 (2d Cir. 1997); *see Holland v. City of N.Y.*, 197 F.Supp.3d 529, 546 (S.D.N.Y. 2016). However, because Plaintiff was a pre-trial detainee at the time of this incident, his claims of alleged sexual abuse are analyzed under the Due Process Clause of the Fourteenth Amendment as opposed to the Cruel and Unusual Punishment Clause of the Eighth Amendment. *See Holland*, 197

F.Supp.3d at 545–46; *see also Cano v. City of N.Y.*, 44 F.Supp.3d 324, 332 (E.D.N.Y. 2014) ("Pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise.") (internal quotations and citation omitted). Nevertheless, although Plaintiff's claim of sexual assault is properly brought pursuant to the Fourteenth Amendment as opposed to the Eighth Amendment, it is clear that any claims alleging a "serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009); *see Cano*, 44 F.Supp.3d 324, 332 (analyzing pre-trial detainees' deliberate indifference claim using the Eighth Amendment framework); *Holland*, 197 F.Supp.3d at 545–46 (applying Eighth Amendment standard to claim of sexual abuse brought by pre-trial detainee). Thus, "[t]o state a traditional Eighth Amendment claim, a plaintiff must allege that (1) the alleged deprivation is 'sufficiently serious' under an objective standard; and that (2) the charged officials acted, subjectively, with a 'sufficiently culpable state of mind.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).[13] When engaging in this two-pronged analysis, "the principal inquiry is whether the contact is

---

**12.** To the extent Plaintiff's Sixth Amendment claim can be construed as a First Amendment claim grounded on his right to meaningful access to the courts, *see Bourdon v. Loughren*, 386 F.3d 88, 93 (2d Cir. 2004) (citing cases); *Osgood*, 2013 WL 3777189, at *6, that claim would nevertheless fail for the same reasons.

**13.** Although the Supreme Court has recently ruled that only the objective standard is appropriate when analyzing claims of excessive force brought by pre-trial detainees, *see Kingsley v. Hendrickson*, —— U.S. ——, 135 S.Ct. 2466, 2473, 192 L.Ed.2d 416 (2015), it is

unclear to what extent this ruling is applicable to a pre-trial detainee's claims of sexual abuse. *See Holland*, 197 F.Supp.3d at 546 (noting that post-*Kingsley* it is unclear whether "sexual abuse claims of a pretrial detainee must still meet both the objective and subjective prongs of the traditional Eighth Amendment analysis" but declining to further address the issue since plaintiff's "allegations fail to meet both."). The Court will therefore apply the pre-*Kingsley* objective and subjective prongs to Plaintiff's claims.

incidental to legitimate official duties, such as a justifiable pat frisk·or strip search,. or by contrast, whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Crawford v. Cuomo*, 796 F.3d 252, 257–58 (2d Cir. 2015). Thus, when analyzing claims of sexual assault or abuse brought by pre-trial detainees (or inmates), courts must be cognizant that

> prison officials looking for contraband may subject inmates to reasonable strip searches and cavity searches ... Indeed prison security and safety may require frequent searches of an intensely personal nature—and not every such search is properly the subject of a lawsuit. Searches that do not uncover contraband may be ·no less penologically justified than those that do. And even an officer who is meticulous in conducting a search does not violate an inmate's constitutional rights as long as the officer had no intention of humiliating the inmate or deriving sexual arousal or gratification from the contact. But a search may not be undertaken maliciously or for the purposes of sexually abusing an inmate.

*Id.* 796 F.3d at 258 (internal citation omitted).

■■■ In the instant case, Plaintiff's claim of sexual assault fails since the Complaint lacks any facts indicating that Officer Foley intended to humiliate Plaintiff or otherwise derived sexual arousal or gratification from the search itself. Nor does the Complaint set forth facts that would show that the "pat frisk" at issue was undertaken for the express purpose of sexually abusing Plaintiff. Rather, the facts presented simply show that incident to the search of Plaintiff's cell, a "pat frisk" was completed. Although the Complaint does not expressly state the reason for the search, if known, given the context and the manner in which it was carried out, the Court can draw the logical inference that Officer Foley conducted the "pat frisk" to establish whether Plaintiff was in possession· of contraband.

Generally, "pat frisks"—of the kind utilized in the present case—typically do not violate the Eighth Amendment's proscription against Cruel and Unusual Punishment. *See Pine v. Seally*, No. 9:09-CV-1198, 2011 WL 856426, at *8 (N.D.N.Y. Feb. 4, 2011), *report and recommendation adopted in part sub nom., Labib v. Seeley*, No. 9:09-CV-1198, 2011 WL 856421 (N.D.N.Y. Mar. 9, 2011) (finding that where Plaintiff alleged that he was inappropriately touched during a "strip frisk," his claim did not "rise to the level of a constitutional violation regardless of the impropriety of the action."); *Morrison v. Cortright*, 397 F.Supp.2d 424 (W.D.N.Y. 2005) (allegation that correctional officer shone a light up·a prisoner's anus, ran his middle finger between the prisoner's buttocks causing the inmate to urinate on himself, and rubbed his penis against prisoner's buttocks during strip frisk failed to implicate the Eighth Amendment); *Davis v. Castleberry*, 364 F.Supp.2d 319, 321 (W.D.N.Y. 2005) (allegation that corrections officer grabbed inmate's penis during pat frisk insufficient to implicate Eighth Amendment); *Montero v. Crusie*, 153 F.Supp.2d 368 (S.D.N.Y. 2001) (allegation that correctional officer, on several occasions, squeezed prisoner's genitalia during pat frisks did not implicate the Eighth Amendment, especially when the inmate did not allege physical injury); *Williams v. Keane*, No. 95 Civ. 379, 1997 WL 527677, at * 11 (S.D.N.Y. Aug. 25, 1997) (allegation that correctional officer put his hand down inmate's pants and fondled inmate's genitals during frisk search failed to implicate the Eighth Amendment). .

The facts as alleged indicate that ·the "pat frisk" was justifiable since it was ·con-

ducted incident to legitimate official duties (*i.e.*, the cell search), *Crawford*, 796 F.3d at 257–58, and Plaintiff does not otherwise assert that the search was unnecessarily prolonged or repeated. Further, although Plaintiff appears to allege instances of verbal harassment in order to buttress his sexual assault claim, "verbal harassment, 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem does not constitute the violation of any federally protected right and, therefore, is not actionable under . . . § 1983.'" *Pine*, 2011 WL 856426, at *8; (quoting *Shabazz v. Pico*, 994 F.Supp. 460, 474 (S.D.N.Y. 1998)); *see also Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (a prison guard calling a plaintiff names did not establish any "appreciable injury" and dismissal of the claim was proper). As such, Plaintiff has not pleaded facts that would satisfy both the objective and subjective prongs of the Eighth Amendment analysis. Plaintiff's sexual abuse claim necessarily fails under its own weight.

### 3. Excessive Force Claim

Plaintiff claims that on September 29, 2015, he was "sprayed with chemicals," "thrown on the floor," and "punched" upon his refusal to submit to a strip search. Compl. Section IV ¶ 3. Because he would have been required to strip in front of the officer whom he claims sexually assaulted him, Plaintiff states that he refused to cooperate. *Id.*

■ "[T]he right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (citing *Bell*, 441 U.S. at 535, 99 S.Ct. 1861); *see Carmona v. City of N.Y.*, No. 13 CV 3273, 2016 WL 4401179, at *2 (S.D.N.Y. Mar. 1, 2016). Traditionally, pre-trial detainees seeking to assert an excessive force claim had to satisfy both an objective and subjective requirement. *Walsh*, 194 F.3d at 49–50; *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999); *Pine*, 2011 WL 856426, at *5. Generally, a plaintiff was required to assert facts showing that a defendant had a sufficiently culpable state of mind (subjective requirement) and that the deprivation being alleged was sufficiently serious or harmful enough (objective requirement). *See Carmona*, 2016 WL 4401179, at *2 (citing *Walsh*, 194 F.3d at 49–50). "In order to satisfy the objective element of the constitutional standard for excessive force, the defendants' conduct must be 'inconsistent with the contemporary standards of decency.'" *Pine*, 2011 WL 856426, at *5 (quoting *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (citation omitted)). It follows that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000). Likewise, "[t]he subjective component of the claim requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct . . . In an excessive-force case, whether conduct was 'wanton' turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 21; *see Pine*, 2011 WL 856426, at *5.

■ Notwithstanding this historical two-pronged approach to analyzing excessive force claims brought by pre-trial detainees, the Supreme Court, in reevaluating this standard, recently determined that a pre-trial detainee need not show "proof (or motive) of intent to punish" in order to "prevail on a claim that his due process

rights were violated. Rather ... a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson,* —— U.S. ——, 135 S.Ct. 2466, 2473–74, 192 L.Ed.2d 416 (2015). As such, the Supreme Court in *Kingsley* held that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." *Id.* at 2473; *see Musaid v. Manka,* No. 13CV7880, 2016 WL 540806, at *3 (S.D.N.Y. Feb. 9, 2016); *Roldan v. Kang,* No. 13-CV-6889, 2016 WL 4625688, at *3 (S.D.N.Y. Sept. 6, 2016).

In *Kingsley,* the Court reasoned that such a standard "is workable" and that "use of an objective standard adequately protects an officer who acts in good faith." *Id.* at 2474. However, the Court cautioned that

> Officers facing disturbances are often forced to make split-second judgments— in circumstances that are tense, uncertain, and rapidly evolving ... For these reasons, we have stressed that a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer. We have also explained that a court must take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate.

*Id.* at 2474 (internal quotations and citation omitted). In addition, *Kingsley* limited liability for claims based upon excessive force to situations "in which the use of force was the result of an intentional and knowing act (though we leave open the

possibility of including a 'reckless' act as well)." *Id.* at 2474.

■ Factors a reviewing court should consider when analyzing claims of excessive force through an objective lens include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 2473; *see Carmona,* 2016 WL 4401179, at *2; *Musaid,* 2016 WL 540806, at *4.

■ Plaintiff states that he was sprayed with chemicals, punched and thrown to the floor for purportedly refusing to submit to a strip search. Compl. Section IV ¶ 3. However, the Complaint and other supporting papers otherwise fail to set forth specific facts which would allow the Court to determine whether Plaintiff has stated a plausible claim for relief in light of the objective standard for analyzing claims of excessive force. For instance, even liberally construing the facts and drawing all reasonable inferences in Plaintiff's favor, the Court is unable to ascertain the events which precipitated the physical force utilized, the identities of the officers involved in the incident and whether these officers possessed a sound objective basis for determining that in light of Plaintiff's conduct, the force used was reasonable. For example, if Plaintiff was actively refusing to cooperate (*i.e.,* resisting), as opposed to peaceably refusing, that fact could make the difference as to whether the physical force used was reasonable in the instant case. Put another way, the Complaint does not contain enough facts to show that prison officials used force "maliciously and sadistically to cause harm rather than in a good-faith effort to maintain

or restore discipline." *Boddie*, 105 F.3d at 862 (internal quotation marks omitted); *but see Banks v. Cty. of Westchester*, 168 F.Supp.3d 682, 689–90 (S.D.N.Y. 2016) (finding Plaintiff stated a claim for excessive force where the complaint alleged "that, on clearly identified occasions, Defendant Gibson smashed [Plaintiff's] hand against [an] iron steel cell door, and Defendant Vega "smashed [his] face on the floor and kicked disinfectant in [his] eyes" and where plaintiff specifically stated that he "need[ed] surgery on [his] right hand," and "had to get [his] eyes flushed").

Even assuming *arguendo* that sufficient facts surrounding the incident did show a level of excessive force, Plaintiff's claim suffers from a more fundamental pleading defect, namely, there is no allegation that Plaintiff sustained *any* injury based upon the level of force used. *See Flemming v. King*, No. 14-CV-316, 2016 WL 5219995, at *3 (N.D.N.Y. June 20, 2016), *report and recommendation adopted*, No. 914CV0316, 2016 WL 5173282 (N.D.N.Y. Sept. 21, 2016) ("The Second Circuit has noted its agreement with other circuits that 'some degree of injury is ordinarily required to state a claim [for excessive force.]' ") (quoting *Benjamin v. Flores*, No.11–CV–4216, 2012 WL 5289513, at *3 (E.D.N.Y. Oct. 23, 2012)); *see, e.g., Chavis v. Chappius*, No. 06-CV-543S, 2015 WL 1472117, at *6 (W.D.N.Y. Mar. 31, 2015) (dismissing an Eighth Amendment claim where the complaint "does not allege any physical injury that occurred as a result of the [defendant's act]"); *Munlyn v. Pietrie*, No. 13-CV-6170, 2014 WL 3695488, at *4 (W.D.N.Y. July 24, 2014) (dismissing an Eighth Amendment claim where the complaint failed to allege "that [the] [p]laintiff

suffered harm or physical injury"); *Flemming v. Kemp*, No. 09-CV-1185, 2012 WL 4094196, at *13 (N.D.N.Y. Aug. 30, 2012) (finding insufficient plaintiff's "allegations that the use of chemical agents was excessive force" where "the use of such chemicals did not cause any harm or pain to [him]"), *adopted by*, 2012 WL 4094009 (N.D.N.Y. Sept. 17, 2012). The only injuries specifically alleged in Plaintiff's Complaint appear to have been the result of deep lacerations to his face caused by the attack at the hands of other inmates during an unrelated incident and the latent effects from those injuries. *See* Compl. Section IV ¶ 4, Section IV.A. Therefore, because Plaintiff has failed to allege that he suffered any injury whatsoever based upon the physical force used by officers in this situation, the Court respectfully recommends to Judge Bianco that Plaintiff's claim of excessive force be dismissed.

### 4. Strip Search Claim

Plaintiff asserts that after refusing to submit to a strip search, he was transported to the medical facility where his clothes were removed and that he was "naked in front of a lot of people." Compl. Section IV ¶ 3. In addition, Plaintiff states that he was transported back to the behavior unit in the nude where he was made to squat "in front of over 20 inmates" after which he was put in the shower." *Id.* Based upon the manner in which the strip search was effectuated, Plaintiff insists the incident constituted a privacy violation.[14] *Id.*

 Strip searches of pre-trial detainees (as well as inmates) are "constitutionally valid if they are reasonably related to a legitimate penological interest." [15] *Ar-*

---

14. In light of Plaintiff's explicit allegation that the search infringed his privacy interests, the Court construes this claim as alleging a Fourth Amendment violation as opposed to

an infringement of Plaintiff's Due Process rights under the Fourteenth Amendment.

15. "[I]t makes no difference whether a plaintiff is a convicted prisoner or a pre-trial de-

nold v. Westchester Cty., No. 09 Civ. 3727, 2012 WL 336129, at *10 (S.D.N.Y. Feb. 3, 2012), *report and recommendation adopted*, No. 09 CIV. 3727, 2012 WL 841484 (S.D.N.Y. Mar. 13, 2012); *see Montgomery v. Hall*, No. 11 Civ. 4645, 2013 WL 1982920, at *3 (S.D.N.Y. May 15, 2013); *Miller v. Bailey*, No. 05-CV-5493, 2008 WL 1787692, at *9 (E.D.N.Y. Apr. 17, 2008) (recognizing that "a strip search is unconstitutional if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish"); *see also Little v. Mun. Corp.*, 51 F.Supp.3d 473, 500 (S.D.N.Y. 2014) (noting that "Plaintiffs have not pleaded any facts to suggest that the search alleged was unreasonable or unrelated to legitimate penological interests."). Although a search must be reasonable, "[p]rison officials need not possess probable cause to conduct a strip search of inmates." *Arnold*, 2012 WL 336129, at *10 (citing *Jean–Laurent v. Wilkerson*, 438 F.Supp.2d 318, 323 (S.D.N.Y. 2006)); *see Montgomery*, 2013 WL 1982920, at *3.

In determining the overall reasonableness of a strip search, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Hodges v. Stanley*, 712 F.2d 34, 35 (2d Cir. 1983) (quoting *Bell*, 441 U.S. at 559, 99 S.Ct. 1861); *Arnold*, 2012 WL 336129, at *10; *Miller*, 2008 WL 1787692, at *9. The Supreme Court has reaffirmed that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S.

318, 132 S.Ct. 1510, 1517, 182 L.Ed.2d 566 (2012). As such, "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to [legitimate security] considerations courts should ordinarily defer to their expert judgment in such matters." *Id.* at 1517 (internal quotations and citations omitted). Therefore, even in cases where an inmate or pre-trial detainee experiences humiliation or embarrassment, such subjective feelings, in and of themselves, will generally not transform an otherwise reasonable search into one that is unreasonable. *See Montgomery*, 2013 WL 1982920, at *4 (recognizing that "[n]ot every embarrassment, humiliation, or psychological discomfort amounts to a constitutional violation") (alteration in original); *Arnold*, 2012 WL 336129, at *10. Further, a strip search is not *per se* unconstitutional merely because it takes place in the "presence of other inmates and employees of the facility—of either sex—during the search." *Montgomery*, 2013 WL 1982920, at *4; *see, e.g., Israel v. City of New York*, No. 11 CIV. 7726, 2012 WL 4762082, at *3 (S.D.N.Y. Oct. 5, 2012) ("The presence of other inmates and officers, males and females, does not alter th[e] determination" that the strip search of plaintiff was constitutional); *Miller*, 2008 WL 1787692, at *9 ("[S]trip searches of prisoners in the presence of other inmates and staff [are] not constitutionally defective, especially in light of legitimate security concerns.") (citing cases).

In reviewing Plaintiff's Complaint, it appears his primary grievance as to the manner in which the strip search was conducted was the fact that his naked body

---

tainee, as, in either case, the constitutionality of the search would depend on its reasonable connection to penological interests." *Simmons v. Cripps*, No. 12 CIV. 1061, 2013 WL 1290268, at *21 (S.D.N.Y. Feb. 15, 2013),

*report and recommendation adopted*, No. 12 CIV. 1061, 2013 WL 1285417 (S.D.N.Y. Mar. 28, 2013) (citing *Covino v. Patrissi*, 967 F.2d 73, 78 n. 4 (2d Cir. 1992)); *Little*, 51 F.Supp.3d at 500 n. 13 (S.D.N.Y. 2014).

was exposed to a number of individuals, including facility staff as well as other inmates. *See* Compl. Section IV ¶ 3. The facts as alleged lead to the reasonable inference that this strip search may have been conducted at random for the purpose of ferreting out the possession of contraband. However, whether randomized or systematic, such a purpose (*i.e.*, searching for contraband) would be in furtherance of a legitimate penological interest (*i.e.*, ensuring the safety and security of all persons within the facility). Significantly, Plaintiff does not interpose any facts to suggest that the search was excessive, was needlessly prolonged or was otherwise meant to intimidate, harass or punish him. Indeed, the manner in which the search was carried out appears to be in response to Plaintiff's initial refusal to comply with the directive to strip which necessitated further action on the part of corrections officers to effectuate the search of Plaintiff's person. *See* Compl. Section IV ¶ 3. Other than harboring feelings of humiliation and embarrassment (the Court logically infers this from the facts alleged), Plaintiff does not claim that he sustained any injuries as a result of the search itself. In short, Plaintiff has not pleaded facts sufficient to show that the strip search at issue was unreasonable and thus unconstitutional. *See Smith v. City of N.Y.*, No. 14 CIV. 5934, 2015 WL 3929621, at *2 (S.D.N.Y. June 17, 2015) (in order to state a viable claim that a strip search was unconstitutional, a "plaintiff must allege facts suggesting that the search did not serve a legitimate penological purpose, but was instead designed to intimidate, harass, or embarrass him"). While the Court acknowledges Plaintiff's feelings of embarrassment and humiliation given his bodily exposure, the facts as pleaded, without more, do not give rise to a constitutional violation. *See Montgomery*, 2013 WL 1982920, at *4 ("That the search was conducted without 'partitions' and that there were 'male or female officers out and about carrying out their duties' similarly does not show that the strip search was overly invasive or went beyond the scope of what was necessary."); *Smith*, 2015 WL 3929621, at *2 (although plaintiff "objects to the fact that the strip searches were conducted in view of the institution's video cameras and other inmates . . . neither the presence of cameras nor the presence of other inmates and employees of a correctional facility makes an otherwise constitutional strip search unconstitutional"); *Peek v. City of New York*, No. 13 Civ. 4488, 2014 WL 4160229, at *2 (S.D.N.Y. Aug. 18, 2014) ("Without more, [ ] the presence of a camera at a strip search does not amount to a constitutional violation."). As such, Plaintiff's constitutional claim arising from the strip search itself fails.

### 5. Failure-to-Protect Claim

Plaintiff alleges that on December 26, 2015, he "was slashed and assaulted by an unknown inmate." Compl. Section IV ¶ 4. Plaintiff claims he reported the incident to Officer Trada. *Id.* Following Plaintiff's report of the assault, he was transported to the medical facility and then taken to a different housing area within NCCC.

Plaintiff suffered another violent altercation on January 6, 2016, while speaking with an officer in the recreation yard. *Id.* According to Plaintiff, an unidentified inmate approached Plaintiff from behind and slashed him from his ear down to his chin. *Id.* At the time he was assaulted, Plaintiff claims another inmate was also under attack at the opposite side of the recreation yard. *Id.* The officer Plaintiff was speaking with told him to "stand still," but when other inmates approached Plaintiff, the officer ran back to his office and locked the door. *Id.*; *see* Pl.'s Opp'n at 3 (stating that "officers watched it happen, told me to

stand still after [I had] gotten slashed [and] when other inmates were approaching [one of the officers] ran and left me and [an]other inmate to get assaulted[.]"). As a result of this second attack, Plaintiff says he sustained a "slash" that ran from his "ear drum all the way to [his] chin" and he needed to undergo plastic surgery to correctly repair the resulting skin damage which required a number of stitches (both external and internal)—so many in fact that the plastic surgeon stated the number was "to[o] many to count." Compl. Section IV. A. In addition, Plaintiff maintains that he has sustained permanent nerve damage to the left side of his face and that he suffers from "extreme headaches that don't go away." *Id.*

■ "Where an individual is incarcerated as a pretrial detainee, protection from mistreatment arises from the Due Process Clause of the Fifth Amendment (if in federal custody) or the Due Process Clause of the Fourteenth Amendment (if in state custody). Courts, however, apply the same 'deliberate indifference' standard from the Eighth Amendment context to such claims." *Stewart v. Schiro*, No. 13-CV-3613, 2015 WL 1854198, at *5 (E.D.N.Y. Apr. 22, 2015) (citing *Caiozzo*, 581 F.3d 63, 69–72 (2d Cir. 2009)) ("Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."). As such, the analysis of a failure-to-protect claim is no different, regardless of whether the claim is asserted by a pretrial detainee or a convicted prisoner. *See Stewart*, 2015 WL 1854198, at *5; *Blake v. Israel Sexton, Sergeant, N.Y. City Police Dep't*, No. 12 CIV. 7245, 2016 WL 1241525, at *3 (S.D.N.Y. Mar. 24, 2016) (noting that "the Second Circuit has stated that

[c]laims for deliberate indifference ... should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment") (internal quotations and citation omitted); *Coronado v. Goord*, No. 99 Civ. 1674, 2000 WL 1372834, at *7 (S.D.N.Y. Sept. 25, 2000) (stating that the standard for bringing a Fourteenth Amendment claim is the same as under the Eighth Amendment).

■ In general, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833, 114 S.Ct. 1970; *see Blake*, 2016 WL 1241525, at *3; *Lojan v. Crumbsie*, No. 12 CV 320, 2014 WL 6643070, at *4 (S.D.N.Y. Oct. 6, 2014). Thus, "[a]llowing an attack on an inmate to proceed without intervening is a constitutional violation in certain circumstances." *Rosen v. City of New York*, 667 F.Supp.2d 355, 359 (S.D.N.Y. 2009) (quoting *Baker v. Tarascio*, No. 3:05-CV-548, 2009 WL 581608, at *4 (D. Conn. Mar. 6, 2009)). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Stewart*, 2015 WL 1854198, at *6 (quoting *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970). Rather, a claim alleging a failure-to-protect or intervene "is a Fourteenth Amendment violation where the officer acted with 'deliberate indifference to a substantial risk of serious harm to an inmate.'" *Rosen*, 667 F.Supp.2d at 359–60 (quoting *Farmer*, 511 U.S. at 828, 114 S.Ct. 1970). In order to state a viable claim for relief therefore, "an inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind ...,

such as deliberate indifference to inmate health or safety." *Stewart*, 2015 WL 1854198, at *6 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)) (internal quotations and citation omitted); *Blake*, 2016 WL 1241525, at *3; *Rosen*, 667 F.Supp.2d at 360.

In determining whether the objective prong has been satisfied, "an inmate must show 'actual or imminent harm.'" *Benjamin v. Fraser*, 343 F.3d 35, 51 n. 17 (2d Cir. 2003) (quoting *Lewis v. Casey*, 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)), *overruled on other grounds, Caiozzo*, 581 F.3d at 70. Put another way, to comply with the objective requirement, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm [and] that the alleged deprivation was, in objective terms, sufficiently serious." *Stewart*, 2015 WL 1854198, at *6 (internal quotations, citations and emphasis omitted); *see Blake*, 2016 WL 1241525, at *3 (noting that "[a] plaintiff need not show a serious physical injury, only the existence of a substantial risk of serious harm") (internal quotations omitted); *Joseph v. Nassau Cty. Corr. Ctr.*, No. 12-CV-4414, 2013 WL 1702162, at *5 (E.D.N.Y. Apr. 19, 2013) (recognizing that to "prevail on [a failure-to-protect] claim, a prisoner must show that he was incarcerated under conditions posing a substantial risk of serious harm . . . .") (internal quotations and citation omitted).

In order to satisfy the subjective component of the inquiry, a plaintiff must "demonstrate that the charged defendants acted with 'deliberate indifference.'" *Blake*, 2016 WL 1241525, at *3. In the current context, "deliberate indifference" means that a defendant "knew of and disregarded an excessive risk of inmate health and safety or that defendant was aware of facts from which it could reasonably be inferred that a substantial

risk of harm existed." *Id.*; *Rosen*, 667 F.Supp.2d at 360; *Lojan*, 2014 WL 6643070, at *4. Consequently, the state of mind required to sustain a claim is equivalent to criminal recklessness. *Stewart*, 2015 WL 1854198, at *6. It follows that mere negligence will not suffice. *Lojan*, 2014 WL 6643070, at *4 ("Mere negligence on the officer's part is not enough to show deliberate indifference."); *Joseph*, 2013 WL 1702162, at *5 (same). Importantly, in a failure-to-protect context, the plaintiff must show that the defendant "observed or had reason to know the plaintiff was involved in a physical altercation with another inmate" and that "the defendant had an extended opportunity to stop the attack but failed to take any action to do so." *Blake*, 2016 WL 1241525, at *4; *Rosen*, 667 F.Supp.2d at 360.

With these standards in mind, the Court finds that although Plaintiff has not pleaded sufficient facts from which to determine whether he has stated a plausible claim for relief as to the first inmate attack, the second attack, as described by Plaintiff, does set forth sufficient facts to state a claim assuming Plaintiff is able to identify the officers involved.

With respect to the objective component, Plaintiff identifies with specificity the injuries he sustained, including a serious slash to the left side of his face requiring a large number of internal and external sutures as well as the expertise of a plastic surgeon. Compl. Section IV. A. Further, Plaintiff states he has suffered latent effects from this attack in the form of nerve damage and "extreme" headaches." These injuries are sufficient to meet the objective prong of the inquiry. *See Knowles v. New York City Dep't of Corrections*, 904 F.Supp. 217, 221 (S.D.N.Y. 1995) (holding that the severity of plaintiff's injury, a cut to the face requiring sixteen stitches, clearly "constitute[d] a denial of the minimal civilized

measure of life's necessities"); *Warren v. Goord*, 579 F.Supp.2d 488, 496 (S.D.N.Y. 2008) (finding the objective prong satisfied based on a cut to plaintiff's face and noting that courts in this District have found the objective prong met based on plaintiffs' physical injuries), *aff'd*, 368 Fed.Appx. 161 (2d Cir. 2010).

Turning to the subjective inquiry, Plaintiff has set forth facts alleging that officers were not only present in the recreation yard during the second attack, but that at least one officer (the officer Plaintiff was speaking with immediately preceding the altercation) directly observed the incident unfold. Compl. Section IV ¶ 4; Pl.'s Opp'n at 3. Although it is difficult to discern from the Complaint and supporting papers whether the officer(s) who directly observed the attack had a sufficient amount of time to stop it, this is a question of fact not appropriate for ultimate determination at the motion to dismiss stage. *See Rosen*, 667 F.Supp.2d at 360 (recognizing that analysis of a failure-to-protect claim involves a "fact-intensive inquiry"). Thus, it is enough that Plaintiff pleaded facts sufficient for the Court to infer that officers could have had enough time to react to prevent or mitigate the attack. Plaintiff has done so here. The Complaint sets forth facts showing that officers "watched" the attack occur, allegedly did nothing to intervene and had enough time to flee to their office in the recreation yard. Compl. Section IV ¶ 4; Pl.'s Opp'n at 3. Such factual assertions are sufficient at this stage to satisfy the subjective prong. *See Candelaria v. Coughlin*, No. 91 Civ. 2978, 1996 WL 88555, at *9 (S.D.N.Y. Mar. 1, 1996) (inaction by a correction officer to intercede and halt an attack by a fellow prisoner is sufficient basis for deliberate indifference); *Desulma v. The City of N.Y.*, No. 98 Civ. 2078, 2001 WL 798002, at *7 (S.D.N.Y. July 6, 2001) (noting that "a correctional officer's presence at an attack of an inmate, where he does nothing to stop an assault, may be sufficient to establish a [deliberate indifference] claim").

In light of the above discussion, if Plaintiff is able to identify the officers involved by name, or, for the moment as "John Doe" Defendants, such action meets the "personal involvement" requirement of § 1983 at this stage and cure the pleading deficiency with respect to this claim. *See Warren v. Goord*, 476 F.Supp.2d 407, 413 (S.D.N.Y. 2007) ("While a plaintiff generally cannot bring a claim against an unidentified person, the rule is not applied strictly against pro se plaintiffs, especially when incarcerated, at this stage in a litigation; instead, 'it is proper for a section 1983 plaintiff to use a 'Doe' pleading until such time as her identity can be learned through discovery or through the aid of the trial court.'") (quoting *Cole v. Artuz*, No. 99 Civ. 0977, 2000 WL 760749, at *6 (S.D.N.Y. June 12, 2000)); *Lapoint v. Vasiloff*, No. 1:15-CV-185, 2016 WL 951566, at *5 (N.D.N.Y. Mar. 9, 2016) ("the plaintiff is ultimately required to 'identify each defendant by name, or else identify them as the 'John Doe Defendants' and provide sufficient factual basis to allow the defendants to successfully identify the John Doe Defendants and prepare for a defense.'") (quoting *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998)); *see Regeda v. City of New York*, No. 09-cv-5427, 2012 WL 7157703, *8 (E.D.N.Y. Sept. 7, 2012). In light of the foregoing analysis, the Court respectfully recommends to Judge Bianco that Plaintiff's failure-to-protect claim be permitted to proceed, so long as Plaintiff cures the pleading deficiency as set forth above.

### 6. Isolation/Segregation Claim

Although Plaintiff does not explicitly plead a constitutional deprivation claim based upon his isolation at Riker's, in liberally construing Plaintiff's Complaint and

supporting papers, the Court nevertheless finds that Plaintiff may have intended to make such a claim and therefore will analyze whether he has stated a claim for relief.

On April 7, 2016, Plaintiff was transferred back to Riker's and was immediately placed in isolation "from everyone in the housing area." Pl.'s Opp'n at 8. Plaintiff states that while in isolation, he was visited by Ms. King, Executive Director of the Board of Corrections, who inquired if Plaintiff was receiving all his entitlements and, in addition, whether he consented to remaining in isolation. *Id.* Plaintiff says he told Ms. King that he "wanted to go back to general population to associate with people instead of being isolated all day." *Id.* Several days later, Plaintiff claims that Chief Turhan Gumusdere and Ms. King spoke with him about remaining in isolation. Plaintiff maintains that he told Chief Gumusdere that he did not "want to be in protective custody." *Id.* According to Plaintiff, Chief Gumusdere stated "[I] heard you [were] giving my budd[ies] in [N]assau a hard time[.] [Y]ou act like an asshole you [are going to] get treated like one." *Id.* Following this conversation, Plaintiff says he was left in isolation until he was subsequently transferred to another facility. *Id.*

"There is no dispute that pretrial detainees, federal or state, may not be subjected to conditions and restrictions that amount to 'punishment' without due process of law." *Valentin v. Murphy*, 95 F.Supp.2d 99, 101 (D. Conn. 2000); *see Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996). It follows that the transfer of an inmate, including a pre-trial detainee, "'to less amenable and more restrictive quarters for nonpunitive reasons' is not a right protected by the due process clause itself." *Covino*, 933 F.2d at 129 (quoting *Hewitt*, 459 U.S. at 468, 103 S.Ct. 864). Thus, to deter-

mine whether a pre-trial detainee's placement in isolation runs afoul of the Due Process clause of the Fourteenth Amendment, the primary inquiry is whether the restriction or condition "is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Bell*, 441 U.S. at 538, 99 S.Ct. at 1873, 60 L.Ed.2d 447. Where there has been no showing of "an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Id.*, 99 S.Ct. at 1873–74, 60 L.Ed.2d 447.

In the instant case, the facts asserted in Plaintiff's opposition papers fail to allege an express intent to punish on the part of prison officials at Riker's. Plaintiff was transferred back to Riker's on April 7, 2016, following two violent altercations while he was alternatively housed at NCCC, which resulted in Plaintiff sustaining serious injuries to his face. Compl. Section IV ¶ 4, Section IV. A.; Pl.'s Opp'n at 8. Upon his return to Riker's, Plaintiff was placed in isolation. Pl.'s Opp'n at 8. Although Plaintiff states that he wanted to return to general population so that he could "associate with people instead of being isolated all day," Plaintiff himself surmised that the reason he was segregated from the rest of the prison population was due to his being placed in protective custody. *Id.* (noting that Plaintiff told Chief Gumusdere that he did not "want to be in protective custody just in case [I] am...."). Other than Chief Gumusdere's statement to Plaintiff—which does not rise to the level of an express intent to punish—the question of whether Plaintiff has stated a claim turns upon whether an alternative purpose for Plaintiff's segrega-

tion is evident and whether the conditions were excessive. *See Bell*, 441 U.S. at 538, 99 S.Ct. at 1873–74, 60 L.Ed.2d 447.

It is important to note that Plaintiff does not allege facts showing that the conditions he experienced while isolated were excessive or otherwise effectively punitive. Rather, he simply states that he wanted to be placed back in general population. Pl.'s Opp'n at 8. Further, based upon Plaintiff's statements and the fact that while at NCCC, Plaintiff had been the target of violent attacks by other inmates, it was objectively reasonable for officials at Riker's to segregate Plaintiff for his own protection upon his brief return. In addition, the overall duration of Plaintiff's segregation was one week since Plaintiff was then transferred to Rockland on April 14, 2016. *Id.* Likewise, during Plaintiff's week in isolation, he was visited at least twice by prison officials (including the Chief, Assistant Chief and Executive Director) and had an opportunity to be heard concerning his placement in isolation. *Taylor v. Comm'r of N.Y. City Dep't of Corr.*, 317 Fed.Appx. 80, 82 (2d Cir. 2009) (where restrictive conditions are imposed for administrative purposes (as opposed to punishment) a pre-trial detainee need only be afforded notice and an opportunity to heard "within a reasonable time following the inmate's transfer").

■ As such, based upon the facts alleged, Plaintiff has failed to state a Due Process claim based on his segregation while housed at Riker's. Indeed, Plaintiff has not pleaded any facts showing (1) an express intent to punish on the part of prison officials, (2) that officials lacked a

legitimate purpose for placing him in segregation (in fact, Plaintiff himself considers that his placement could have been for his own protection), or (3) that the conditions he was exposed to were excessive. *See Taylor*, 317 Fed.Appx. at 82 (recognizing that "[t]he district court correctly determined that there was no evidence in the record demonstrating that [defendants] intended to punish [plaintiff] and that "[i]t was reasonable to isolate [plaintiff] for his own protection and that of the prison population, after he was implicated in an assault against an inmate who subsequently died."); *see also Griffith v. Hofmann*, No. 2:05 CV 126, 2008 WL 4682690, at *5 (D. Vt. Oct. 21, 2008) ("Standing alone, [plaintiff's] four days in administrative segregation was not an atypical and significant hardship."). In light of the foregoing discussion, the Court respectfully recommends to Judge Bianco that Plaintiff's Isolation / Segregation claim be dismissed.

### 7. *Monell* Claim

■ Although not specifically pleaded as a claim against the City of New York, Plaintiff's opposition papers can be read to include an allegation that the New York City Department of Corrections [16] "created [and] allowed the countinuance [*sic*] of [a] policy or custom . . . of unconstitutional transfers to county jail[s] outside of [ ] [New York City]" where such facilities had "more restrictive housin[g] then [New York City] jails." Pl.'s Opp'n at 11. In support of this conclusion, Plaintiff quotes a passage from what he claims is a Department of Corrections policy stating that

---

16. The Court construes Plaintiff's claim as being brought against New York City itself since the Department of Corrections, as an administrative arm of New York City, is not a suable entity. *See Mulvihill v. N.Y.*, 956 F.Supp.2d 425, 427 (W.D.N.Y. 2013) (" 'In New York, agencies of a municipality are not

suable entities' because '[u]nder New York law, departments that are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot be sued.' ") (quoting *Omnipoint Comm'ns, Inc. v. Town of LaGrange*, 658 F.Supp.2d 539, 552 (S.D.N.Y. 2009)).

" 'when an inmate is sent to jail in [ ] New York City for confinement whether sentenced or unsentenced, they are placed in the custody of the New York City Department of Correction. If the Department of correction deems it nessisary [*sic*] to house an inmate in another facility, they may do so[.]' " *Id.* at 10.[17]

In order to state a § 1983 claim against a municipality, "a plaintiff must assert that the alleged violations were committed pursuant to an official policy, practice or custom." *Holland*, 197 F.Supp.3d at 551 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); *see Feliciano v. Cty. of Suffolk*, 419 F.Supp.2d 302, 312 (E.D.N.Y. 2005). To successfully set forth such a claim, a plaintiff is required to plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Feliciano*, 419 F.Supp.2d at 312 (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)); *see Simms v. City of N.Y.*, 480 Fed.Appx. 627, 629 (2d Cir. 2012). In order to establish the first element (*i.e.*, the existence of a policy of custom), a plaintiff can allege that one of the following exists: "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policymaker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the mu-

nicipal employees." *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015) (quoting *Brandon v. City of New York*, 705 F.Supp.2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted)).

"Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, a complaint does not 'suffice if it tenders naked assertion[s] devoid of further factual enhancement.' " *McLennon v. City of N.Y.*, 171 F.Supp.3d 69, 94 (E.D.N.Y. 2016) (quoting *Green v. City of Mount Vernon*, 96 F.Supp.3d 263, 301–02 (S.D.N.Y. 2015) (internal citations omitted)). As such, to survive a motion to dismiss a municipal liability claim, "a plaintiff must allege facts tending to support, at least circumstantially, an inference that ... a municipal policy or custom exists." *Santos v. New York City*, 847 F.Supp.2d 573, 576 (S.D.N.Y. 2012) (citing *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)); *see Tieman*, 2015 WL 1379652, at *13 ("mere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details.").

"Demonstrating that the municipality itself caused or is implicated in the constitutional violation is the touchstone of establishing that a municipality can be held liable for unconstitutional actions taken by municipal employees." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004); *see Tieman*, 2015 WL 1379652, at *12 (recognizing that "there must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.") (internal cita-

---

**17.** Plaintiff does not provide a citation for this purported policy. In addition, Defendant fails to address in any of its motion papers whether such a policy does in fact exist.

tion omitted); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection-an affirmative link-between the policy and the deprivation of his constitutional rights") (internal quotation marks omitted). This principle is critical because "a city cannot be held liable under § 1983 on a theory of *respondeat superior*." *Id.* at 125; *see also Vassallo v. Lando*, 591 F.Supp.2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong") (emphasis in original).

▮▮▮▮ In order to set forth the "necessary causal connection between the municipality and the constitutional deprivation," it is sufficient for a plaintiff to allege "a municipal policy or ordinance is itself unconstitutional. . . ." *Amnesty Am.*, 361 F.3d at 125; *see Feliciano*, 419 F.Supp.2d at 312. However, even where a policy or custom is constitutional on its face, a plaintiff may support a municipal theory of liability based on the fact that the municipality "causes its employees to apply it unconstitutionally, such that the unconstitutional application might itself be considered municipal policy. . . ." *Amnesty Am.*, 361 F.3d at 125; *see Feliciano*, 419 F.Supp.2d at 312. In order to support allegations based upon this latter theory, a plaintiff must set forth facts showing that "the actions of the employee in question may be said to represent the conscious choices of the municipality itself. Such an action constitutes the act of the municipality and therefore provides a basis for municipal liability where it is taken by, or is attributable to, one of the city's authorized policymakers." *Id.* at 126 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). Therefore, a single action taken by

a "decisionmaker who 'possesses final authority to establish municipal policy with respect to the action ordered,' is sufficient to implicate the municipality in the constitutional deprivation for the purposes of § 1983." *Id.* (quoting *Pembaur*, 475 U.S. at 481–82, 106 S.Ct. 1292). It follows that in cases where a plaintiff alleges a constitutional deprivation by lower-level employees who have been delegated authority, municipal liability may only attach by showing that "the authorized policymakers approve[d] a subordinate's decision and the basis for it." *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion)).

▮▮▮ The above principles can be succinctly stated as follows: "a municipality cannot be held vicariously liable for the constitutional torts of its employees or agents under § 1983. Nor can a policy, custom, or practice arise from a single instance of unconstitutional conduct by a municipal employee who is not a municipal policymaker under state law." *Santos*, 847 F.Supp.2d at 576.

Here, Plaintiff's opposition papers not only allege the existence of a policy but also appear to cite and quote language from the policy itself. *See* Pl.'s Opp'n at 10 (" 'when an inmate is sent to jail in [ ] New York City for confinement whether sentenced or unsentenced, they are placed in the custody of the New York City Department of Correction. If the Department of correction deems it nessisary [*sic*] to house an inmate in another facility, they may do so[.]' "). Although Plaintiff does not provide an actual specific reference as to where the policy can be found, he does state that the policy was "created by the Department of Correction." *Id.* Although this is a close question given the lack of surrounding facts, the Court finds that Plaintiff has at least sufficiently identified

a municipal policy, which satisfies the first element of pleading a *Monell* claim. *See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997) ("[I]n *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to *identify* a municipal 'policy' or 'custom' that caused the plaintiff's injury.") (emphasis added); *Vaher v. Town of Orangetown, N.Y.*, 916 F.Supp.2d 404, 439 (S.D.N.Y. 2013) ("To satisfy the first prong of the test on a motion to dismiss, a plaintiff must allege the existence of . . . a formal policy which is officially endorsed by the municipality[.]").

Notwithstanding Plaintiff's identification of such a policy, the language itself—which states only that the Department of Corrections is authorized to transfer inmates when it deems such a transfer to be necessary—does not appear unconstitutional on its face. Moreover, Plaintiff's Complaint offers no facts to support a claim that the policy, as written, is otherwise unconstitutional. Indeed, "[t]he due process clause is not implicated when a pre-trial detainee is transferred from one facility to another." *Covino*, 933 F.2d at 129; *see Lipton*, 315 F.Supp.2d at 447–48; *Corley*, 2015 WL 5729985, at *7) ("[T]he mere transfer of a pretrial detainee within a prison population or between prisons does not give rise to a protected liberty interest under the Due Process Clause."); *Butler v. Westchester Cty.*, 2000 WL 335539, at *4 ("Due process is not implicated when a pretrial detainee is transferred from one facility to another."); *Butler v. N.Y. State Corr. Dep't*, 1996 WL 438128, at *4–5 (finding that transfer of pretrial detainee between state correctional facilities did not in itself implicate the Due Process clause). Thus, Plaintiff's *Monell* claim—based upon a theory that the policy itself is constitutionally infirm—lacks merit since the policy as writ-

ten did not deny him a constitutional right to which he was otherwise entitled.

 Even though Plaintiff has not successfully asserted a facial challenge, the Court next considers whether Plaintiff has alleged facts supporting an "applied" challenge (*i.e.*, that the policy, as applied to Plaintiff, caused a deprivation of a constitutionally protected right). The Court reads Plaintiff's opposition papers as alleging (1) that Chief Turhan Gumusdere—who was "in charge" of Plaintiff's transfer to other facilities—sought to punish him for his continual complaints to prison officials and (2) that Plaintiff's subsequent transfer to Rockland, therefore, constituted an unconstitutional application of the Department of Corrections transfer policy. Pl.'s Opp'n at 8, 11. In addition, Plaintiff claims that the Commissioner of the New York City Department of Corrections permitted Chief Gumusdere and Captain Williams to engage in the "unconstitutional transfer[ ]" of pre-trial detainees. *Id.* Despite these allegations, there is no indication in the Complaint that Chief Gumusdere or Captain Williams were "authorized policymakers" such that their actions can be directly attributed to the City of New York. *See Amnesty Am.*, 361 F.3d at 125. Based upon the Complaint and supporting documents, the Court infers that both of these individuals are lower-level employees (*i.e.*, below the policymaking level). Plaintiff must therefore show that "the authorized policymakers approve[d] a subordinate's decision and the basis for it," *Id.* at 126, or that a policymaking official "ordered or ratified the [lower-level] employee's actions—either expressly or tacitly." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012). As to this requirement, Plaintiff's allegations miss the mark. There are no facts alleged which point to a conclusion that Commissioner Ponte ordered, ratified or otherwise approved the decision

by Chief Gumusdere to transfer Plaintiff to either NCCC or Rockland. Indeed, Plaintiff's opposition itself states that "Chief Gumusdere was the person *in charge* for moving me." Pl.'s Opp'n at 11 (emphasis added). Thus, with no facts asserting direct involvement by a policymaking official, the actions taken by Chief Gumusdere, a lower-level employee, cannot be attributed to the City of New York. As such, Plaintiff has not sufficiently pleaded facts to support a *Monell* claim based on an applied challenge to the policy. *See Johnson*, 2011 WL 666161, at *2 ("A municipality cannot be held liable under § 1983 solely because it employs a tortfeasor or solely on a *respondeat superior* theory.").

In light of the foregoing analysis, the Court respectfully recommends to Judge Bianco that Plaintiff's *Monell* claim be dismissed.

### E. Leave to Replead

▮ Subsequent to the filing of Defendants' respective Motions to Dismiss Plaintiff's Complaint, Plaintiff filed a Motion to Amend [DE 33]. However, in liberally construing Plaintiff's opposition papers to Defendants' Motion to Dismiss, the Court has duly considered all facts and arguments raised in the Complaint as well as Plaintiff's oppositions papers. The Court has therefore effectively considered these additional materials as having amended the pleading itself. *See Pankey v. Brown*, No. 9:08-CV-1298, 2009 WL 3418145, at *2 (N.D.N.Y. Oct. 16, 2009) (recognizing that "the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's com-

plaint."). Nevertheless, the Court is mindful of the Second Circuit's instruction that "a district court should not dismiss a *pro se* complaint 'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Hernandez v. Sposato*, No. 14-CV-4593, 2015 WL 4097784, at *5 (E.D.N.Y. July 8, 2015) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quotation omitted)); *see Steadman v. Mayo*, No. 09 Civ. 5154, 2012 WL 1948804, at *6 (S.D.N.Y. Mar. 27, 2012) ("Generally, a *pro se* plaintiff should get at least one chance to amend his or her complaint before a court dismisses it due to a pleading deficiency.") (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999)); *Campbell v. Sposato*, No. 15-CV-1958, 2015 WL 9267222, at *5 (E.D.N.Y. Nov. 17, 2015), *report and recommendation adopted*, No. 15CV1958, 2015 WL 9273951 (E.D.N.Y. Dec. 16, 2015) (recommending that because plaintiff was proceeding in a *pro se* capacity he should be afforded leave to amend his pleading).

In an abundance of caution, the Court has compared the allegations in Plaintiff's proposed Amended Complaint ("Am. Compl.") against those stated in his original Complaint as amplified by his opposition papers. In doing so, the Court concludes that with small variances, the allegations themselves as well as the underlying facts supporting the allegations remain the same. *Compare* Compl. and Pl.'s Opp'n *with* Proposed Am. Compl. Essentially, it appears that Plaintiff has incorporated the additional facts set forth in his opposition materials into his amended pleading. Thus, the Court has already effectively considered these additional facts in adjudicating Defendants' motions to dismiss.

The primary difference between the Complaint and the proposed Amended

Complaint is the number of Defendants that Plaintiff seeks to include as parties to the action. Whereas the original Complaint named only Joseph Ponte and Michael Sposato as Defendants, Plaintiff's proposed Amended Complaint seeks to add 13 additional individuals and entities as parties. Initially, the Court points out that although Plaintiff again seeks to include Joseph Ponte and Michael Sposato as Defendants in his proposed Amended Complaint, the amended pleading similarly fails to properly allege their personal involvement in any of the alleged constitutional deprivations of which he complains. *See Farid*, 593 F.3d at 249 (recognizing that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (quoting *Farrell*, 449 F.3d at 484) (citation omitted); *see also Pettus*, 554 F.3d at 300. In addition, although Plaintiff seeks to add the New York City Department of Corrections and the Nassau County Sheriffs Division of Correction as Defendants, these entities are solely administrative arms/agencies with no independent identity separate from the municipality to which they are attached. Consequently, these entities are not amenable to suit. *See Omnipoint Comm'ns, Inc.*, 658 F.Supp.2d at 552; *Santiago v. City of N.Y.*, No. 06-15508, 2008 WL 2854261, at *3 (S.D.N.Y. July 21, 2008).

Plaintiff next seeks to add both the City of New York and the County of Nassau as Defendants. However, the allegations in both the original Complaint (and by extension, the Amended Complaint) do not state a claim for municipal liability pursuant to *Monell* and, thus, these municipal entities are not proper parties to Plaintiff's lawsuit. Plaintiff also names Officer Foley in his Amended Complaint. However, Officer Foley is no longer a proper party since the Court has determined that the sole allegation involving Officer Foley (Plaintiff's sexual assault claim) should be dismissed. Plaintiff also names Chief Turhan Gumusdere, Captain Williams, Sergeant Frias, Officer Candriva, Officer Trada, Corporal McCaffe, Officer John Doe # 1 and Officer John Doe # 2 as Defendants.

Turning to the merits of Plaintiff's underlying claims, the Court recommends to Judge Bianco that Plaintiff's claim alleging a Due Process violation in conjunction with his transfer from Riker's to Rockland and his claim alleging a failure-to-protect (deliberate indifference) proceed and that Plaintiff be permitted to amend his pleading to include these claims. However, Plaintiff's remaining claims—as set forth in both his original Complaint and his amended pleading—fail to state viable causes of action upon which relief can be granted. Put another way, both the Complaint and the proposed Amended Complaint appear to have "substantive problems and [a] better pleading will not cure [them], [s]uch a futile request to replead should be denied." *Mateo v. Dawn*, No. 14-CV-2620, 2016 WL 5478431, at *9 (S.D.N.Y. Sept. 28, 2016).

In light of this finding, Plaintiff's attempt to add Captain Williams, Sergeant Frias, Officer Candriva, Officer Trada and Corporal McCaffe would be futile since none of these individuals appear to have had the requisite personal involvement in the allegations necessary to state a viable claim for relief. *See Andujar v. McClellan*, No. 95 CIV. 3059, 1996 WL 601522, at *2 (S.D.N.Y. Oct. 21, 1996) ("It would be futile for [plaintiff] to file the amended complaint attached to his papers because the proposed amended complaint does not contain sufficient allegations of personal involvement by the defendants to survive a motion to dismiss. The proposed Amended Complaint is wholly devoid of allegations as to how proposed defendants . . . were

personally involved in the alleged deprivation of his constitutional rights."); *see also Harrell v. City of N.Y.*, 138 F.Supp.3d 479, 495 (S.D.N.Y. 2015), *on reconsideration in part sub nom., Harrell v. Joshi*, No. 14-CV-7246, 2015 WL 9275683 (S.D.N.Y. Dec. 18, 2015) ("the complaint must allege facts that establish the defendants' individual actions were proximate causes of the alleged constitutional deprivations."). Thus, this Court recommends o Judge Bianco that Plaintiff be permitted to amend his Complaint solely to substitute Chief Turhan Gumusdere, Officer John Doe # 1 and Officer John Doe # 2 as Defendants in this action. *See Warren v. Goord*, 476 F.Supp.2d at 413 (permitting incarcerated *pro se* plaintiff to use a "John Doe" pleading until "such time as [his] identity can be learned through discovery or through the aid of the trial court"); *Peterson v. Tomaselli*, No. 02 CIV. 6325, 2004 WL 2211651, at *5 (S.D.N.Y. Sept. 30, 2004) ("it is well settled in the Second Circuit that a *pro se* plaintiff who is incarcerated, and 'therefore unable to carry out a full pre-trial investigation,' may simply name defendants as 'John Doe' in his complaint until further investigation during discovery.") (quoting *Valentin v. Dinkins*, 121 F.3d 72, 75–76 (2d Cir. 1997)); *see Griffin v. New York City: Dep't of Corr. Rikers Island*, No. 91 Civ. 1694, 1993 WL 322872, at *2 (S.D.N.Y. Aug. 17, 1992) (plaintiff's failure to identify individual officers "not necessarily fatal to the complaint").

Although the Court would ordinarily recommend that Plaintiff be provided an opportunity to amend in order to replead his remaining claims, here, Plaintiff has already had the opportunity to amend his complaint once. In addition, the Court has liberally construed Plaintiff's opposition to the Motions to Dismiss in such a way that it effectively amounts to another pleading. *See Lang v. New York City Health and Hosps. Corp.*, No. 12-CV-5523, 2013 WL 4774751, at *4 (S.D.N.Y. Sept. 5, 2013) ("[C]ourts have construed allegations in *pro se* oppositions as motions to amend in view of the duty to construe *pro se* filings liberally.") (citing *Santiago v. Pressley*, No. 10-CV-4797, 2011 WL 6748386, at *5 (S.D.N.Y. Dec. 23, 2011)); *Huggins*, 2015 WL 7345750, at *9. As such, "because [Plaintiff] has now had two opportunities to amend his complaint and any further attempt would be futile . . ., he should not be granted leave to further amend his Complaint" as to the remaining claims (with the exception of the claims noted above as recommended). *Huggins*, 2015 WL 7345750, at *9; *see Best v. City of New York*, No. 12-CV-7874, 2014 WL 163899, at *3 (S.D.N.Y. Jan. 15, 2014) (denying leave to amend where plaintiff had already been given two opportunities to do so, and noting that "the Court can only afford [Plaintiff] so many bites at the apple."); *Mateo*, 2016 WL 5478431, at *9 ("courts are especially wary of giving plaintiffs multiple 'bites at the apple' where a plaintiff has already been granted leave to amend."); *Anthony v. Brockway*, No. 15-CV-451, 2015 WL 5773402, at *3 (N.D.N.Y. Sept. 30, 2015) ("[The] [p]laintiff has already been given one opportunity to amend his complaint . . ., and there is nothing in his second amended complaint suggesting that [he] could do better given another opportunity."); *Al–Qadaffi v. Servs. for the Underserved (SUS)*, No. 13-CV-8193, 2015 WL 585801, at *8 (S.D.N.Y. Jan. 30, 2015) (denying leave to amend where "[the plaintiff] has already had one chance to amend his [c]omplaint, and there is still no indication that a valid claim might be stated if given a second chance"), *aff'd*, 632 Fed.Appx. 31 (2d Cir. 2016); *Bui v. Indus. Enters. of Am., Inc.*, 594 F.Supp.2d 364, 373 (S.D.N.Y. 2009) (dismissing an amended complaint with prejudice where the plaintiff failed to cure the

deficiencies identified in his initial complaint despite "being given ample opportunity to do so").

## V. Conclusion

For the foregoing reasons, the Court respectfully recommends to Judge Bianco that Defendants' motion to dismiss Plaintiff's Complaint be GRANTED. The Court further recommends that Plaintiff's motion to amend his complaint be GRANTED, in part, and DENIED, in part, in accordance with this Report and Recommendation. Specifically, the Court recommends that Plaintiff be permitted to amend his Complaint to: (1) substitute Chief Turhan Gumusdere and Officers John Doe # 1 and John Doe # 2 as Defendants; and (2) assert claims of constitutional deprivations of his Fourteenth Amendment Due Process rights based upon his transfer from Riker's to Rockland as well as his failure-to-protect claim.

## VI. Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joseph F. Bianco, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Bianco prior to the expiration of the fourteen (14) day period for filing objections.** Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Beverly v. Walker*, 118 F.3d 900,

901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883, 118 S.Ct. 211, 139 L.Ed.2d 147 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Defendants' counsel is directed to serve a copy of this Report and Recommendation upon the *pro se* Plaintiff forthwith by overnight mail and first class mail and to file proof of such service on ECF.**

**SO ORDERED.**